**RECEIVED**
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE _11/03/09_

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| NAKENIA JOHNSON | CIVIL ACTION NO. 09-0113 |
| VERSUS | JUDGE DOHERTY |
| HOSPITAL CORP. OF AMERICA, ET AL. | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Pending before the Court are two motions: (1) the Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment [Doc. 16] filed by defendant Hospital Corporation of America ("HCA"); and (2) the Motion to Dismiss [Doc. 3] filed by defendant Dauterive Hospital ("Dauterive"). HCA seeks dismissal of plaintiff's racial discrimination and retaliation claims under Title VII, plaintiff's state law discrimination claims under La. Rev. Stat. §23:301, *et seq.*, and plaintiff's claims under Louisiana's Whistleblower Statute, La. Rev. Stat. §23:967, on grounds HCA was not plaintiff's "employer." Plaintiff Nakenia Johnson ("plaintiff") filed an opposition brief to HCA's motion [Doc. 26]. Dauterive seeks "to dismiss all of the Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6)" on grounds plaintiff's claims have prescribed. Plaintiff filed an opposition brief that addresses only portions of Dauterive's motion; therefore, some portions of Dauterive's motion are unopposed [Doc. 18].

For the following reasons, HCA's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment is DENIED, and Dauterive's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## I.     Factual and Procedural Background

At the outset, the Court notes the issue of which entity – HCA[1] or Dauterive – is the plaintiff's employer is a disputed fact.  In her original Complaint filed on January 23, 2009, plaintiff alleges she was "an employee of the defendant [HCA]."[2]  In her Amended Complaint, filed on March 26, 2009, plaintiff added Dauterive as a defendant, but alleges she was an employee of "the defendant," without designating *which defendant* – HCA or Dauterive -- employed her.  In her opposition brief to Dauterive's motion, plaintiff states she "was hired by Defendant Dauterive Hospital . . . on September 22, 2003."[3]  Yet, in her opposition brief to HCA's motion, plaintiff alleges she was hired by "[d]efendants."[4]  In its motion to dismiss, Dauterive contends plaintiff was employed by *Dauterive* and attaches a copy of what appears to be a W2 Earnings Statement for plaintiff that lists plaintiff's employer as "CHP Payroll Agent, Inc., Dauterive Hospital Corp., Dauterive Hospital."  Based on the foregoing, defendant *HCA* contends Dauterive was the plaintiff's employer, while plaintiff herself has, at various times, alleged her employer was Dauterive, HCA, or both.

With the foregoing in mind, on August 25, 2007, during her employment, plaintiff filed an EEOC Charge of Discrimination against *Dauterive* alleging race discrimination and retaliation. Plaintiff resigned her position at the hospital on November 2, 2007.  HCA had no involvement in plaintiff's EEOC charges and was not named as a respondent to those charges.  On October 27, 2008, the EEOC issued plaintiff a Dismissal and Notice of Rights letter.  Pursuant to the Notice, plaintiff

---

[1] According to Dauterive, HCA is the parent corporation of Dauterive.

[2] See Doc. 1, Plaintiff, Complaint, ¶2.

[3] See Doc. 18, plaintiff's opposition brief to Dauterive's motion, at p. 1.

[4] See Doc. 26, plaintiff's opposition brief to HCA's motion, at p. 5.

was required to file suit in federal court within 90 days of receiving the Notice.

On January 23, 2009, plaintiff filed suit against *HCA*, alleging she was subjected to racial discrimination and retaliation in violation of Title VII (42 U.S.C. §2000, *et. seq.*), Louisiana Employment Discrimination Law (La. Rev. Stat. §23:301, *et. seq.*), and Louisiana's Whistleblower Statute (La. Rev. Stat. §23:967). Specifically, plaintiff alleges she was the only black registered nurse in Dauterive's emergency room; she was demoted from the position of charge nurse to staff nurse on April 27, 2007; this demotion resulted in a reduction in her wages; a Caucasian nurse with fewer years of experience received a larger raise than she did; the emergency room director, a Caucasian, purposefully understaffed plaintiff's shifts and excluded her from opportunities to work two-day weekends; and Caucasian co-workers provided a hostile work environment after plaintiff filed her EEOC Charge by demeaning and intimidating plaintiff in conferences and subjecting her to unfair evaluations. Plaintiff alleges the discrimination, harassment and retaliation caused her severe emotional distress, mental anguish, humiliation, embarrassment and pain and suffering. Additionally, plaintiff alleges on August 17, 2007, she attended Dauterive's Employee Assistance Program seeking counseling for the stress she allegedly experienced, and on September 17, 2007, plaintiff requested a transfer that was never granted. Plaintiff alleges she felt coerced and compelled to resign from her position at the hospital on November 2, 2007. Additionally, plaintiff alleges a claim for defamation, contending two co-workers submitted documentation to the hospital's administration accusing plaintiff of timesheet fraud during May 2007 and October 2007.

Plaintiff's original Complaint does not name Dauterive as a defendant. However, on March 26, 2009, more than 150 days after receiving her right to sue letter, plaintiff filed a First Amended and Supplemental Complaint in this Court [Doc. 2], adding Dauterive as a defendant to the litigation.

Plaintiff served her First Amended and Supplemental Complaint on HCA and Dauterive, through CT Corporation, on March 27, 2009.

## II.   Legal Standards

### A.   Rule 12(b)(1) Standard

Motions filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the court to hear a case. Fed. R. Civ. P. 12(b)(1). The district court has the power to dismiss a case pursuant to Rule 12(b)(1) in any one of three instances: (1) the complaint alone; (2) a complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion to dismiss is imposed on the party asserting jurisdiction. *Id.* "A motion under Rule 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

### B.   Rule 12(b)(6) Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted), *quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004).  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Breaches Litig.*, 495 F.3d at 205, *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to

-4-

raise a right to relief above the speculative level[.]" *Id., quoting Bell Atl.*, 127 S.Ct. at 1965. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl.*, 127 S.Ct. at 1964-65 (citations, quotation marks, and brackets omitted) (emphasis added). *See also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

Determining whether a complaint states a plausible claim for relief is, therefore, a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Ashcroft*, 129 S.Ct. at 1950. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id.* at 1950. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.*

**C.    Summary Judgment Standard**

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618

(5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility
> of demonstrating the absence of an issue of material fact with respect to those issues
> on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477
> U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial,
> the movant may merely point to an absence of evidence, thus shifting to the
> non-movant the burden of demonstrating by competent summary judgment proof that
> there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v.
> Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell
> Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient
> evidence favoring the nonmoving party for a jury to return a verdict for that party"
> is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
> 249 (1986).

The Supreme Court has instructed:

The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after
adequate time for discovery and upon motion, against a party who fails to make a
showing sufficient to establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at trial.  Where no such
showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law'
because the nonmoving party has failed to make a sufficient showing on an essential
element of her case with respect to which she has the burden of proof."

. . . .

. . . In ruling upon a Rule 56 motion, "a District Court must resolve any
factual issues of controversy in favor of the non-moving party" only in the sense that,
where the facts specifically averred by that party contradict facts specifically averred
by the movant, the motion must be denied. That is a world apart from "assuming"
that general averments embrace the "specific facts" needed to sustain the complaint.
As set forth above, Rule 56(e) provides that judgment "shall be entered" against the
nonmoving party unless affidavits or other evidence "set forth specific facts showing
that there is a genuine issue for trial." The object of this provision is not to replace
conclusory allegations of the complaint or answer with conclusory allegations of an
affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no
genuine dispute as to a specific fact essential to the other side's case to demand at
least one sworn averment of that fact before the lengthy process of litigation
continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence.  We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.  We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) *(en banc)*(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id.  To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

**III.    Analysis**

**A.    HCA's Motion to Dismiss, or in the alternative, Motion for Summary Judgment**

HCA seeks dismissal of plaintiff's racial discrimination and retaliation claims under Title VII, plaintiff's state law discrimination claims under La. Rev. Stat. §23:301, *et seq.*, and plaintiff's claims under Louisiana's Whistleblower Statute, La. Rev. Stat. §23:967, on grounds such claims are only properly asserted against an "employer," and HCA was not plaintiff's "employer."  Rather,

HCA contends plaintiff was hired by Dauterive Hospital Corporation.  HCA further argues "Dauterive" is owned and operated by Dauterive Hospital Corporation; and Dauterive Hospital Corporation owns all assets, business and properties of Dauterive.  HCA contends "Hospital Corporation of America" is an assumed name for HCA, Inc., which is Dauterive Hospital Corporation's ultimate parent corporation.  HCA additionally contends the other individuals identified in plaintiff's petition – plaintiff's co-workers – are similarly not employed by HCA, but rather, were employed by Dauterive Hospital Corporation.  Thus, HCA contends it did not control the scheduling, supervision, training or details of these employees' work and did not have the authority to retain or dismiss them.  HCA contends Dauterive Hospital Corporation was the corporate entity that made the final decisions regarding employment matters related to the plaintiff, and, therefore, there can be no liability in this matter against HCA under Title VII or Louisiana law.

Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year." 42 U.S.C. §2000e(b).  Based on the foregoing, HCA characterizes "employer" as the entity that provides compensation to or pays its employees.  Louisiana's discrimination law, codified at La. Rev. Stat. §23:301, *et seq.*, defines "employer" as follows:

> "Employer" means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. "Employer" shall also include an insurer, as defined in R.S. 22:46, with respect to appointment of agents, regardless of the character of the agent's employment. . .

La. Rev. Stat. §23:302(2) (West 2009).

The Fifth Circuit has held the term "employer" as used in Title VII of the Civil Rights Act

-8-

was meant to be liberally construed. *Trevino v. Celanese Corp.*, 701 F.2d 397, 403 (5th Cir. 1983). Thus, the Fifth Circuit has held "superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer." *Trevino*, 701 F.3d at 403. The factors considered in determining whether distinct entities constitute an integrated enterprise are: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Id.* at 403-04. The Fifth Circuit and other courts applying this four-part standard in Title VII and related cases have focused on the second factor: centralized control of labor relations. *Id.* at 407. The critical question that courts ask with regard to this factor is: "What entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Id.*

Although HCA contends HCA and Dauterive do not constitute a single employer, there is conflicting evidence in the record on this question. In response to HCA's motion for summary judgment, plaintiff sets forth the following evidence related to this issue:

- The email addresses of Dauterive Hospital personnel, including those supervisors named in Plaintiff's complaint, end with the suffix "@HCAhealthcare.com." Plaintiff argues the foregoing raises a reasonable inference of interrelated operations, common management, and common ownership or financial control.

- Plaintiff's 401(k) retirement plan is administered by HCA. Plaintiff contends the foregoing raises a reasonable inference of interrelated operations, common management, and common financial control.

- On July 12, 2007, plaintiff was contacted about arranging a meeting with Sherry Neil, HCA Assistant Vice President of Diversity. Although plaintiff ultimately decided against the meeting, Ms. Neil did call plaintiff at her home the next morning to discuss her availability. Plaintiff contends Ms. Neil's presence on the Dauterive Hospital campus and her official intervention on diversity matters raise a reasonable inference of interrelated operations, centralized control of labor relations, employment diversity issues in particular, and common management.

- On July 12, 2007, Nursing Supervisor Mona Moore received an email on behalf of

Ms. Neil, inviting her to respond to a "Discovering Diversity Profile" and to participate in an on-site diversity training session. The invitation listed Ms. Neil's contact information and concluded, "Thank you for your ongoing leadership commitment to HCA's diversity and inclusion strategy." Plaintiff argues this invitation to training raises an inference of interrelated operations, centralized control of labor relations, employment diversity issues in particular, and common management.

- HCA directed Dauterive CEO Alan Fabian to approve pick-up shifts because HCA determined the Dauterive ER/ICU had a suspicious amount of pick-up time. Plaintiff argues this directive on behalf of HCA raises a reasonable inference of centralized control of labor operations and common management.

- HCA maintained an Ethics and Compliance hotline that was made available to Dauterive employees, including ER employees who used it to report irregularities in pick-up shifts at the hospital. Plaintiff contends the HCA hotline raises a reasonable inference of interrelated operations, centralized control of labor relations, and common management.

- HCA is clearly named in the Dauterive Hospital position description, implying that HCA had the ability to determine the terms and conditions of plaintiff's employment. Plaintiff argues HCA's influence on the position descriptions at Dauterive Hospital raises a reasonable inference of centralized control of labor operations.

- "HCA" appears by name in several places on Dauterive's website, including prominent links on the primary homepage to "HCA Emergency Information" and "HCA Physician Recruitment." Plaintiff argues HCA's conspicuous presence on Dauterive's homepage, and its role in physician recruitment, raises a reasonable inference of interrelated operations, common management, centralized control of labor relations, and common ownership or financial control.

- Dauterive Emergency Room employees are administered an annual "HCA Employee Survey." The resulting report statistically compares the responses of "Emergency Room" employees next to the responses of other "Dauterive Hospital" employees and all "HCA" employees. Plaintiff contends the HCA Employee Survey raises a reasonable inference of interrelated operations, common management, and centralized control of labor operations.

The plaintiff contends the foregoing facts reasonably support an inference that, "along with Dauterive, HCA functioned as plaintiff's *de factor* employer." Alternatively, plaintiff believes additional evidence related to the issue of whether HCA and Dauterive are single employers is

-10-

discoverable and would be found among documents in HCA's and/or Dauterive's possession. Plaintiff contends she should be given the opportunity to discover that information to determine whether liability exists on the part of HCA.

In *Trevino*, the Fifth Circuit stated it "need not speculate as to the quality or quantity of additional information showing [parent company] control over [subsidiary company] employees that Trevino might have obtained had full discovery been permitted in this case." 701 F.2d at 404. The Court further stated:

> While it would be premature on the basis of the record before us to decide that Celanese and ABI constitute a single employer for the purposes of this action, the facts do not clearly indicate that Trevino cannot under any discernible circumstance prove single employer status.

*Id.* at 404-05 (internal citation omitted).

Similarly, in this matter, while this Court cannot conclude at this time that HCA and Dauterive constitute a single employer for purposes of this action, the facts do not clearly indicate plaintiff *cannot* under any discernable circumstance prove single employer status. This Court concludes plaintiff should be permitted to engage in discovery to determine the extent of liability on the part of HCA under this legal theory.

Under the standard presented in Rule 12(b)(6), this Court must accept all factual allegations as pled by the plaintiff as true. Additionally, this Court must determine whether plaintiff's claims have facial plausibility, that is, whether plaintiff has pled sufficient factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft*, 129 S.Ct. at 1950. In the instant case, the plaintiff has pled variously that she was employed by HCA, Dauterive, or both entities. In her opposition brief to the instant motion, plaintiff contends the issue of which entity employed plaintiff is a factual issue for which further discovery

-11-

is necessary to resolve.  Alternatively, the plaintiff sets forth evidence clearly showing there are genuine issues of material fact as to the issue of whether HCA and Dauterive are single employers for purposes of plaintiff's Title VII claim.  Considering the foregoing, this Court concludes HCA's motion should be denied under the standards of both Rule 12(b)(6) and Rule 56.  Under Rule 12(b)(6), this Court concludes plaintiff has presented sufficient factual evidence to state claims for relief that are plausible on their face under Title VII, Louisiana's employment discrimination law (§23:301, *et seq.*), and Louisiana's Whistleblower Statute (La. Rev. Stat. §23:967).  Alternatively, this Court concludes there are genuine issues of material fact as to the issue of whether HCA and Dauterive are single employers for purposes of plaintiff's Title VII and related claims.

Therefore, IT IS ORDERED that HCA's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment [Doc. 16], is DENIED.

**B.     Dauterive's Motion to Dismiss**

Dauterive contends plaintiff's claims against it are untimely, as they were alleged more than 90 days after plaintiff received her Notice and Right to Sue Letter from the EEOC.  Dauterive contends the plaintiff's failure to timely file her claims against Dauterive deprives this Court of subject matter jurisdiction over plaintiff's claims (pursuant to Rule 12(b)(1)), and that, in filing her claims untimely, plaintiff fails to state a claim for which relief can be granted (pursuant to Rule 12(b)(6)).  Therefore, Dauterive seeks dismissal of all of plaintiff's claims on grounds they are prescribed.

**1.     Are Plaintiff's Title VII Claims Against Dauterive Prescribed?**

Under Title VII, an employment discrimination plaintiff must exhaust administrative remedies before pursuing her claims in federal court.  *Taylor v. Books A Million, Inc.,* 296 F.3d 376,

378-79 (5th Cir. 2002).  In order to exhaust administrative remedies, a plaintiff must first file a timely

charge with the EEOC and receive a notice of right to sue.  *Taylor*, 296 F.3d at 378-79.  Title VII

provides claimants 90 days to file a civil action after receiving a right-to-sue notice.  *Id.; see also* 42

U.S.C. §2000e-5(f)(1).[5]

Commencing an action within 90 days of receipt of a right-to-sue letter is not a jurisdictional

prerequisite; rather, the ninety-day requirement is akin to a statute of limitations.  *Espinoza*, 754 *F.2d*

*at 1249 n.1, citing Sessions v. Rusk State Hospital, 648 F.2d 1066, 1069-70 (5th Cir.1981); Nilsen*

*v. City of Moss Point,* 701 F.2d 556, 563 (5th Cir.1983) *(en banc)* ("we hold that the timely filing

requirements of Title VII are to be treated as limitation periods for all purposes").  The Fifth Circuit

has noted this distinction is important for at least two reasons:

> First, the ninety-day requirement, as a nonjurisdictional statutory precondition to suit,
> may be subject to tolling and waiver.  Second, the issue of subject matter jurisdiction
> may be resolved by the district court in a manner fundamentally different from the
> defense of limitations.  On a Rule 12(b)(1) motion to dismiss for lack of subject
> matter jurisdiction, a district court may itself resolve disputed fact questions.  On a
> Rule 12(b)(6) motion to dismiss for failure to state a claim, on the other hand, the
> district court must accept the truth of plaintiff's allegations or rely upon only those

---

[5] 42 U.S.C. §2000e-5(f)(1) states:

(f) Civil action by Commission, Attorney General, or person aggrieved . . .

> **(1)** . . . .  If a charge filed with the Commission pursuant to subsection (b) of this section
> is dismissed by the Commission, or if within one hundred and eighty days from the filing
> of such charge or the expiration of any period of reference under subsection (c) or (d) of
> this section, whichever is later, the Commission has not filed a civil action under this
> section or the Attorney General has not filed a civil action in a case involving a
> government, governmental agency, or political subdivision, or the Commission has not
> entered into a conciliation agreement to which the person aggrieved is a party, the
> Commission, or the Attorney General in a case involving a government, governmental
> agency, or political subdivision, shall so notify the person aggrieved and *within ninety
> days after the giving of such notice a civil action may be brought against the
> respondent named in the charge (A) by the person claiming to be aggrieved* or (B) if
> such charge was filed by a member of the Commission, by any person whom the charge
> alleges was aggrieved by the alleged unlawful employment practice. . . .

42 U.S.C. §2000e-5(f)(1) (emphasis added).

matters outside of the pleadings with respect to which there is no genuine issue of fact.

*Espinoza*, 754 F.2d at 1249 n.1 (internal citations omitted).

Thus, as an initial matter, this Court finds Dauterive's motion to dismiss plaintiff's claims on this ground pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is improper, in that the question of timely filing under 42 U.S.C. §2000e-5(f)(1) is not *jurisdictional*. This does not end the inquiry, however, as the Court must determine whether dismissal of the plaintiff's Title VII claims are proper under Rule 12(b)(6).

Turning now to the merits of the argument, in the instant case, the EEOC issued plaintiff's Dismissal and Notice of Rights letter on October 27, 2008. Plaintiff had 90 days from that date – or until January 25, 2009[6] – to file her lawsuit for race discrimination and retaliation against Dauterive. In the instant motion to dismiss, Dauterive contends although plaintiff filed a Complaint on January 23, 2009, within the 90-day period, her Complaint did not name or provide any notice to Dauterive, her actual employer and respondent to the EEOC Charge, until March 27, 2009, when Dauterive was served with plaintiff's Amended Complaint in the lawsuit. This occurred almost 150 days after the right to sue notice was issued. Accordingly, Dauterive argues plaintiff's claims against it are untimely.

In response, plaintiff alleges her claims against Dauterive were timely, because of the following facts: (1) her original lawsuit – which named HCA as a defendant – was timely filed; (2) Dauterive's joinder was proper as a permissive joinder under Rule 20 of the Federal Rules of Civil

---

[6] January 25, 2009 fell on a Sunday; plaintiff filed her lawsuit on Friday, January 23, 2009.

-14-

Procedure;[7] (3) Dauterive and HCA share the same counsel; and (4) Dauterive and its illegal actions were named and cited in plaintiff's original complaint.  Plaintiff alleges the subsequent joinder of Dauterive arises out of the same facts and legal issues as her original complaint, joinder of defendants in one action is favored as a federal policy and applied liberally by courts, and Dauterive was on notice as a potential defendant due to its direct parent-subsidiary relationship with HCA, such that it knew or should have known it stood to be named as a defendant.

Plaintiff cites *Barkins v. Int'l Inns, Inc.*, 825 F.2d 905 (5th Cir. 1987) in support of her argument.  In *Barkins*, the two plaintiffs worked at the Holiday Inn in Gretna, Louisiana.  The hotel was owned and operated by International Inns, Inc., which held a franchise from Holiday Inns, Inc., a Tennessee corporation completely separate from International Inns.  Plaintiffs were terminated in April 1985 and brought a racial discrimination complaint against Holiday Inns before the EEOC.  At the EEOC hearings, International Inns' counsel represented Holiday Inn.  The EEOC issued a "right-to-sue" letter to one plaintiff on April 4, 1986, and to the second plaintiff the next day.  Copies of these letters were sent to International Inns' counsel.  On June 27, 1986, plaintiffs filed a Title VII suit in federal district court naming "Holiday Inns, Inc." as the defendant.  On July 2, 1986 – before the expiration of the 90-day limitations period – Barkins and Kellup served Holiday Inns, Inc. in

---

[7] Joinder of defendants is governed by Rule 20 as follows:

**(2) *Defendants.*** Persons--as well as a vessel, cargo, or other property subject to admiralty process in rem--may be joined in one action as defendants if:

**(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

**(B)** any question of law or fact common to all defendants will arise in the action.

Fed.R.Civ.P. 20(a)(2).

Memphis, Tennessee.  On July 8, 1986, approximately 95 days after the right-to-sue letters were issued, a Holiday Inns employee wrote plaintiffs' attorneys informing them, apparently for the first time, that the true employer was International Inns.  The same day, Holiday Inns wrote International Inns to tell International of the service of process.  *Barkins v. International Inns, Inc.*, 825 F.2d 905, 906 (5th Cir. 1987).

Plaintiffs amended their complaint on August 21, 1986, and the district court granted a motion to allow the amended complaint to relate back to the original complaint's filing date under Fed.R.Civ.P. 15(c), finding International Inns received notice of plaintiffs' claims against it through counsel.  The district court also granted permission for an interlocutory appeal and stayed proceedings pending appeal.

On appeal, the Fifth Circuit focused its attention on the "relation-back" provision of Rule 15(c),[8] and noted courts have held "relation-back" is governed by four factors: (1) the basic claim

---

[8] The version of Rule 15(c) that was discussed in the *Barkins* case has been amended.  However, However, the  the four factors discussed in the case are still relevant and applicable.

The current, amended version of Rule 15(c) provides as follows:

**(c) Relation Back of Amendments**

    **(1)** *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:

        **(A)** the law that provides the applicable statute of limitations allows relation back;

        **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

        **(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint [i.e., within 120 days following the filing of the complaint], the party to be brought in by amendment:

            **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and

-16-

must have arisen out of the conduct set forth in the original pleadings; (2) the added party must have received sufficient notice that it would not be prejudiced in maintaining its defense; (3) the added party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period. *See also Schiavone v. Fortune*, 477 U.S. 21, 29 (1986).

In *Barkins*, International Inns argued it had not received notice of the plaintiffs' claims against it until after the requisite ninety-day period had passed, when Holiday Inns informed it of service of process. However, the court noted International Inns' counsel also represented Holiday Inns at plaintiffs' EEOC hearings. The court noted several decisions in which the Fifth Circuit has held notice to counsel constitutes notice to a client for Rule 15(c) purposes. Thus, the court held although International Inns and Holiday Inns are two separate entities, International Inns was aware of the suit against Holiday Inns through shared counsel, and International Inns had pointed to no prejudice from plaintiffs' mistake in naming Holiday Inns as the defendant employer when International Inns was the true employer. 825 F.2d at 907.

In the instant case, plaintiff does not expressly argue the theory of relation-back in her opposition brief, however, in citing the *Barkins* case, the issue of relation-back has been squarely set before the Court. Notwithstanding the foregoing, this Court concludes plaintiff fails to satisfy all four relation-back factors. Although the plaintiff clearly satisfies the first factor, in that the claims

---

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

This Court observes although Rule 15(c)(3) refers only to the *changing or substitution* of parties – and not the *addition* of parties – the Fifth Circuit has applied the rule in circumstances where a new defendant is sought to be added. *See, e.g., Braud v. Transport Service Co. of Illinois*, 445 F.3d 801, 806-07 (5th Cir. 2006).

-17-

asserted against Dauterive in the amended complaint arise out of the conduct set forth in the timely-filed original petition, plaintiff has problems with the second, third, and fourth factors. The most glaring problem for plaintiff is that *she failed to serve any defendant within the 90-day limitations period*. Dauterive contends, and plaintiff does not dispute, *neither HCA nor Dauterive was served in this matter until March 27, 2009*, when both parties were served with a copy of plaintiff's Amended Complaint. That date of service is more than 90 days after the plaintiff was issued her right to sue letter by the EEOC. Thus, the *Barkins* case is distinguishable, because in *Barkins*, the plaintiff served Holiday Inns prior to the expiration of the 90-day limitations period, which satisfied the fourth factor. The Court then found notice to International Inns because of the shared counsel between Holiday Inns and International Inns.

Although plaintiff contends Dauterive has shared counsel with HCA "at all relevant times," in its reply brief, Dauterive contends while the parties share counsel *now*, counsel for Dauterive did not represent either Dauterive or HCA at the EEOC stage. Indeed, HCA was not a party to the EEOC proceedings. Counsel for Dauterive is careful to say neither *she* nor HCA had any notice of plaintiff's EEOC charge against Dauterive. However, Dauterive itself was the respondent in the EEOC proceedings, and it, therefore, clearly had notice of such charge. The Fifth Circuit has held the true owner of a defendant hotel received notice of a suit when the owner participated in the EEOC hearings leading up to the suit. *See Marks v. Prattco, Inc.*, 607 F.2d 1153, 1156 (5th Cir. 1979). However, the *Marks* decision was decided before the Supreme Court's decision in *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986), which set forth the factor that the notice requirement must be satisfied *within the prescribed limitations period*. In this case, plaintiff does not dispute that she did not serve HCA or Dauterive within the 90-day period following her receipt of her right to sue letter

from the EEOC.

Considering the foregoing, this Court concludes plaintiff fails to satisfy the relation-back factors. Therefore, plaintiff's claims against Dauterive do not "relate back" to plaintiff's timely-filed complaint against HCA. *See, e.g., Hendrix v. Department of Agriculture Agency*, 677 F.Supp. 465 (W.D. La. 1987) (J. Little) (plaintiff could not amend her Title VII complaint to name proper defendant because she failed to serve any defendant within the limitations period.); *Bell v. Veteran's Administration Hospital*, 654 F.Supp. 69 (W.D. La.) (J. Little) (complaint could not be amended to name proper defendant under relation back because employee did not serve improper party until after expiration of Title VII's limitations period), *aff'd*, 826 F.2d 357 (5th Cir. 1987).[9] Because plaintiff has not alleged her Title VII claims against Dauterive within the limitations period, and because plaintiff's Title VII claims against Dauterive are DISMISSED WITH PREJUDICE as prescribed.

### 2. Are Plaintiff's Louisiana State Law Discrimination Claims Prescribed?

Dauterive seeks dismissal of plaintiff's Louisiana state discrimination claims on grounds they, too, are prescribed. Plaintiff's state law claims are alleged under "Louisiana's Employment Discrimination Law," La. Rev. Stat. §23:301, *et seq*." Under that body of law, La. Rev. Stat. §23:303(D) imposes a one-year prescription period for filing an employment discrimination claim.[10]

_____

[9] This Court finds plaintiff's contention that Dauterive should have been on notice of the lawsuit because its parent company, HCA, was named in the original complaint is without merit, pursuant to *Lockett v. General Finance Loan Co.*, 623 F.2d 1128 (5th Cir. 1980), unpersuasive, as Locket did not involve an application of Title VII's 90-day limitations period.

[10] La. Rev. Stat. §23:303(d) states:

D. Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months.

Dauterive contends this one-year period commences on the day the injury or damage is sustained pursuant to Article 3492 of the Louisiana Civil Code,[11] and that the discriminatory act and damages occur upon the employee's first notice of an adverse employment action. *See Eastin v. Entregy*, 865 So. 2d 49, 54 (La. 2004).

Plaintiff does not oppose Dauterive's motion on this point. Ordinarily, this Court would grant such a motion in the absence of an opposition brief. However, this Court's ruling on the issue must be in accordance with established law. For the following reasons, this Court concludes Dauterive's motion is not well-grounded in law on all points.

Dauterive cites *Rivera v. State of Louisiana*, 2006 WL 901826 (E.D. La. March 31, 2006) (M.J. Chasez),[12] in support of its position, in which the court held plaintiff's one-year prescriptive period began to run the date she resigned from employment (January 23, 2003); prescription was thereafter suspended for six months upon plaintiff's contact with the EEOC on April 23, 2003, which occurred after the plaintiff resigned. In *Rivera*, The plaintiff was required to file suit on July 23, 2004. When she did not file suit until December 6, 2004, the court dismissed plaintiff's state law discrimination claims.

However, the instant case is factually distinguishable from the facts in *Rivera*, because in the

---

La. Rev. Stat. §23:303 (West 2009).

[11] Article 3492 states:

> Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.

La. Civ. Code art. 3492 (West 2009).

[12] This Court notes it is not bound by the decisions of other district courts in this circuit.

-20-

instant case, the plaintiff filed her EEOC charge on August 25, 2007, *before* she resigned from

employment on November 2, 2007.  Dauterive contends, pursuant to La. Rev. Stat. §23:303(D),

plaintiff's state discrimination claims would have been tolled for six months commencing with the

date of contact with the EEOC – August 25, 2007 – and expiring on February 25, 2008.  Dauterive

contends plaintiff then had one year – or until February 25, 2009 – to file her lawsuit against

Dauterive.  Because plaintiff did not file her state law claims against Dauterive until March 26, 2009,

Dauterive contends those claims are prescribed.

However, the foregoing presupposes that plaintiff is alleging no violations of law beyond the

date she filed her EEOC charge.  Indeed, a review of plaintiff's Amended Complaint shows she is

alleging violations beyond that date – August 25, 2007 -- as follows:

### 14.

Plaintiff asserts that Candace Frioux, Antoinette Lassiegne (Caucasian), and Neal Manual (Caucasian), **provided a hostile work environment** **subsequent to plaintiff's filing the EEOC claim.** Plaintiff was demeaned and intimidated in conferences by Candace Frioux, Antoinette Lassiegne, and Neal Manual, and was also subjected to unfair evaluations.

### 15.

The discrimination, harassment and retaliation that defendant subjected Ms. Johnson to caused her severe emotional distress, mental anguish, humiliation and embarrassment, along with physical pain and suffering.

### 16.

On August 17, 2007, plaintiff attended Dauterive Hospital Employee Assisted Program (EAP), seeking counseling in order to address issues related to stress caused by the harassment she experienced while working at the hospital.

### 17.

Plaintiff requested a transfer on September 17, 2007. Her transfer was never granted.

**18.**

Feeling coerced and compelled to do so, plaintiff resigned from her position at Dauterive Hospital on November 2, 2007.

Based on the foregoing, plaintiff contends she was subjected to a hostile work environment subsequent to the time she filed her EEOC complaint. Additionally, to the extent plaintiff is alleging retaliation, such retaliation necessarily occurred *after* the filing of the EEOC charges. Therefore, it appears the plaintiff is alleging acts violative of Title VII after the date she filed her EEOC charge on August 25, 2007, but before her resignation on November 2, 2007.

With respect to causes of action arising from allegations of discrimination that allegedly occurred on August 25, 2007 or prior thereto, this Court finds plaintiff's claims may well have prescribed. However, to the extent plaintiff is alleging acts of discrimination that post-date August 25, 2007, such claims may not have prescribed. Indeed, one may not begin tolling prescription for claims on which prescription has not yet begun to run. As Dauterive has not specified which state law "claims" it seeks to have dismissed on prescription grounds, it has not carried its burden to show it is entitled to the relief requested. Consequently, Dauterive's motion seeking dismissal of plaintiff's state law claims as prescribed is DENIED for failure of Dauterive to carry its burden.

**3.     Did Plaintiff Provide Dauterive Notice of her Discrimination Claims Pursuant to La. Rev. Stat. §23:303(C)?**

Notwithstanding the foregoing, Dauterive contends plaintiff's state law discrimination claims also should be dismissed because they are not actionable, in that plaintiff failed to comply with La. Rev. Stat. §23:303(C), which requires thirty days notice of discrimination before the commencement of court action, as follows:

-22-

C. A plaintiff who believes he or she has been discriminated against, and who intends to pursue court action shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action, shall detail the alleged discrimination, and both parties shall make a good faith effort to resolve the dispute prior to initiating court action.

La. Rev. Stat. §23:303(C) (West 2009).

In its motion to dismiss, Dauterive contends the first notice it received regarding plaintiff's state law discrimination claims was on March 27, 2009, when it was served with the plaintiff's lawsuit. However, the record shows plaintiff filed charges with the EEOC on August 25, 2007, wherein plaintiff named Dauterive Hospital as her employer and checked the appropriate boxes indicating claims of both race discrimination and retaliation – but not constructive discharge and forced resignation. Additionally, in its opposition brief, plaintiff argues Dauterive has already admitted its Human Resources Manager Michelle Broussard received a written copy of the EEOC letter indicating its dismissal of the discrimination and retaliation charges along with plaintiff's right to sue on or around October 27, 2008.

Although it does not appear the Fifth Circuit has ruled on the issue, other district courts in this circuit have ruled a charge of discrimination with the EEOC qualifies as notice under La. R.S. §23:303(C). *See, e.g., Owens v. Albertsons, Inc.*, 2005 U.S. Dist. LEXIS 33517, at *9 (W.D. La. 12/5/05) (J. James) ("…a plaintiff's state law claims should not be dismissed for failing to comply with the provisions of La. Rev. Stat. 23:303(C) where the plaintiff has properly filed a charge of discrimination with the EEOC."); *Lombardino v. Brentwood Health Mgmt. L.L.C.*, 2005 WL 2600439, at *2 (W.D. La. Oct.13, 2005) (J. Stagg) (holding a state discrimination claim should be dismissed for failing to satisfy notice requirements unless plaintiff has filed a charge with the EEOC within the appropriate time periods); *McFarlain v. Carrier Sales & Distribution, L.L.P.*, Docket No.

-23-

04-1275, 2005 WL 1994514, at *3 (W. D.La. Aug.16, 2005) (Mag. Judge Hill) (holding that "[f]ailure to satisfy the notice component, unless the plaintiff has filed a charge of discrimination with the EEOC, warrants dismissal ..."). Although this Court is not bound by the foregoing district court decisions, this Court finds these decisions instructive in the absence of Fifth Circuit guidance on the issue.

In the instant case, because plaintiff filed an EEOC charge, notice of which Dauterive received more than thirty days before the filing of the present lawsuit, this Court concludes plaintiff has satisfied the requirements of La. Rev. Stat. §23:303(C) *with respect to her state law claims for discrimination and retaliation.* However, because plaintiff's EEOC charge did not include allegations of constructive discharge and forced resignation, the filing of the EEOC charge would not have provided sufficient notice to Dauterive with respect to those claims. Consequently, this Court concludes plaintiff provided Dauterive with proper notice of her claims pursuant to La. Rev. Stat. §23:303(C) with respect to the state law discrimination and retaliation claims, but not with respect to the constructive discharge and forced resignation claims.

Additionally, this Court notes it is well-settled courts may not consider claims brought under Title VII that were not included in a charge of discrimination with the EEOC. *See Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.,* 40 F.3d 698, 711-12 (5th Cir.1994). *See also Tolbert v. United States,* 916 F.2d 245, 247-48 (5th Cir.1990) (per curiam) ("It is well-settled that courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies."). "[A] judicial complaint filed pursuant to Title VII 'may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation *during the pendency of the case before the Commission.'" Sanchez v. Standard Brands,*

-24-

*Inc.,* 431 F.2d 455, 466 (5th Cir.1970).

In the instant case, Dauterive contends plaintiff did not include claims for constructive discharge and forced resignation in her EEOC charge. The plaintiff does not dispute this portion of Dauterive's motion, and, therefore, does not clarify for this Court how her claims of constructive discharge and forced resignation are "like or related to [the] allegations contained in the [EEOC] charge." Therefore, in addition to this Court's finding that plaintiff failed to provide Dauterive with notice of her constructive discharge and forced resignation claims, this Court concludes the plaintiff failed to exhaust administrative remedies with respect to her constructive discharge and forced resignation claims. Therefore, Dauterive's motion to dismiss plaintiff's state law discrimination an retaliation claims for lack of notice is DENIED. However, Dauterive's motion to dismiss plaintiff's state law constructive discharge and forced resignation claims for lack of notice and failure to exhaust administrative remedies is GRANTED.

**4.     Are Plaintiff's Claims for Defamation and Whistleblower Retaliation under La. Rev. Stat. §23:967 Prescribed?**

Dauterive contends in addition to her discrimination and retaliation claims alleged under Title VII and Louisiana's Employment Discrimination Law, plaintiff arguably alleges causes of action for defamation and retaliation under Louisiana's Whistleblower Statute, codified at La. Rev. Stat. §23:967. Dauterive contends the foregoing claims are delictual actions subject to a prescriptive period of one year. *See Nolan v. Jefferson Parish Hosp. Service Dist. No. 2,* 790 So.2d 725 (La. App. 5th Cir. 2001) (whistle-blower claims are delictual in nature; absent any specification within La.R.S. §23:967, a cause of action thereunder is subject to the general one-year prescriptive period pursuant to Article 3492); *see also Wiggins v. Creary,* 475 So.2d 780, 781 (La. App. 1st Cir.), *writ*

*denied,* 478 So.2d 910 (La. 1985) (claims for defamation are delictual in nature and are subject to La.C.C. art. 3492's one-year prescriptive period, which commences to run from the day injury or damage is sustained).

Dauterive contends the latest possible date of defamation or whistleblower retaliation in plaintiff's case was November 2, 2007, the date Johnson resigned her position with Dauterive. Dauterive contends plaintiff has alleged no defamation or whistleblower retaliation after that date. Therefore, Dauterive argues plaintiff was required to file a lawsuit alleging these claims no later than November 2, 2008. Because plaintiff did not file her claims of defamation and whistleblower retaliation against Dauterive until March 26, 2009, Dauterive contends the foregoing claims are prescribed.

Plaintiff does not respond to Dauterive's contentions in her opposition brief and raises no argument to support her reason for not bringing the foregoing claims until March 26, 2009. Considering the foregoing, this Court finds plaintiff's defamation and retaliation claims pursuant to Louisiana's Whistleblower Statute, La. Rev. Stat. §23:967, are prescribed.

## IV.    Conclusion

Therefore, for the foregoing reasons,

IT IS ORDERED that the Hospital Corporation of America's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment [Doc. 16] is DENIED.

IT IS FURTHER ORDERED that Dauterive Hosptial's Motion to Dismiss [Doc. 3] is GRANTED IN PART and DENIED IN PART, as follows: (1) Dauterive's motion to dismiss plaintiff's Title VII claims as prescribed is GRANTED, and these claims are DISMISSED WITH PREJUDICE; (2) Dauterive's motion to dismiss plaintiff's state law discrimination claims is

GRANTED IN PART AND DENIED IN PART, as follows: (a) Dauterive's motion to dismiss plaintiff's state law discrimination claims as prescribed is DENIED for failure of Dauterive to carry its burden; (b) Dauterive's motion to dismiss plaintiff's state law discrimination and retaliation claims for lack of notice is DENIED; and (c) Dauterive's motion to dismiss plaintiff's state law constructive discharge and forced resignation claims for lack of notice and failure to exhaust administrative remedies is GRANTED, and the foregoing claims are DISMISSED WITH PREJUDICE; and (d) Dauterive's motion to dismiss plaintiff's defamation and whistleblower retaliation claims as prescribed pursuant to La. Rev. Stat. §23:967 is GRANTED, and the foregoing claims are DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _____3_____ day of November, 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

COPY SENT
DATE 11/3/09
BY
TO

-27-