**RECEIVED**

FEB 1 1 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

NAKENIA JOHNSON                              CIVIL ACTION NO. 09-0113

VERSUS                                       JUDGE DOHERTY

HOSPITAL CORP. OF AMERICA, ET AL.            MAGISTRATE JUDGE METHVIN

### MEMORANDUM RULING

Pending before the Court are two motions: (1) Motion for Summary Judgment [Doc. 62] filed

by defendant HCA, Inc., d/b/a Hospital Corporation of America ("HCA"), and (2) Motion for

Summary Judgment [Doc. 59] filed by defendant Dauterive Hospital ("Dauterive").  For the

following reasons, HCA's motion for summary judgment is GRANTED, and all of plaintiff's claims

against HCA are DISMISSED WITH PREJUDICE. It is further ordered that Dauterive's motion for

summary judgment is GRANTED IN PART and DENIED IN PART.

**I.     Factual and Procedural Background**

The instant lawsuit alleges claims for racial discrimination, harassment, and retaliation

arising out of an alleged employment relationship between the plaintiff, a black female nurse, and

the defendant corporations, Dauterive Hospital and HCA, Dauterive's parent company.  In August

2007, plaintiff was employed as a nurse at Dauterive Hospital.  On August 25, 2007, during her

employment, plaintiff filed an EEOC Charge of Discrimination against *Dauterive* alleging race

discrimination and retaliation.  Plaintiff resigned her position at the hospital on November 2, 2007.

HCA had no involvement in plaintiff's EEOC charges and was not named as a respondent to those

charges. On October 27, 2008, the EEOC issued plaintiff a Dismissal and Notice of Rights letter.

Pursuant to the Notice, plaintiff was required to file suit in federal court within 90 days of receiving the Notice.

On January 23, 2009, plaintiff filed suit against *HCA*, alleging she was subjected to racial discrimination and retaliation in violation of Title VII (42 U.S.C. §2000, *et. seq.*), Louisiana's Employment Discrimination Law (La. Rev. Stat. §23:301, *et. seq.*), and Louisiana's Whistleblower Statute (La. Rev. Stat. §23:967, *et seq.*).[1]  Specifically, plaintiff alleges she was the only black registered nurse in Dauterive's emergency room; she was demoted from the position of charge nurse to staff nurse on April 27, 2007; this demotion resulted in a reduction in her wages; a Caucasian nurse with fewer years of experience received a larger raise than she did; the emergency room director, a Caucasian, purposefully understaffed plaintiff's shifts and excluded her from opportunities to work two-day weekends; and Caucasian co-workers provided a hostile work environment after plaintiff filed her EEOC Charge by demeaning and intimidating plaintiff in conferences and subjecting her to unfair evaluations.   Plaintiff alleges the discrimination, harassment, and retaliation caused her severe emotional distress, mental anguish, humiliation, embarrassment, and pain and suffering.  Additionally, plaintiff alleges on August 17, 2007, she attended Dauterive's Employee Assistance Program seeking counseling for the stress she allegedly experienced, and on September 17, 2007, plaintiff requested a transfer that was never granted. Plaintiff alleges she felt coerced and compelled to resign from her position at the hospital on November 2, 2007.  Additionally, plaintiff alleged a claim for defamation, contending two co-

---

[1] Louisiana's Whistleblower Statute outlaws reprisal by an employer against an employee who, in good faith and after advising the employer of the violation of law, discloses or threatens to disclose an unlawfully discriminatory business practice, provides information to a public body investigating such violation of law, or objects to or refuses to participate in such an employment practice. *Seal v. Gateway Companies, Inc.*, 2002 WL 10456, 2 (E.D. La. 2002) (explaining Louisiana law).

2

workers submitted documentation to the hospital's administration accusing plaintiff of timesheet fraud during May 2007 and October 2007. Plaintiff's original Complaint does not name Dauterive as a defendant. However, on March 26, 2009, more than 150 days after receiving her right to sue letter, plaintiff filed a First Amended and Supplemental Complaint in this Court [Doc. 2], adding Dauterive as a defendant to the litigation. Plaintiff served her First Amended and Supplemental Complaint on HCA and Dauterive, through CT Corporation, on March 27, 2009.

The parties have already engaged in one extensive round of dispositive motions. Defendant HCA previously filed a Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment [Doc. 16], seeking dismissal of plaintiff's racial discrimination, harassment, and retaliation claims under Title VII, plaintiff's state law discrimination, harassment, and retaliation claims under La. Rev. Stat. §23:301, *et seq.*, and plaintiff's claims under Louisiana's Whistleblower Statute, La. Rev. Stat. §23:967, on grounds HCA was not plaintiff's "employer." Additionally, defendant Dauterive previously filed a Motion to Dismiss seeking "to dismiss all of the Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6)" on grounds plaintiff's claims have prescribed.

Before this Court addresses the specifics of its rulings on the previous motions filed by the parties, this Court sets forth and clarifies the claims that were pending before this Court at the time those motions were ruled on. Specifically, the plaintiff has alleged claims falling under three "categories": (1) plaintiff's discrimination, harassment, and retaliation claims alleged under Title VII, which include claims for constructive discharge, forced resignation, and denial of transfer; (2) plaintiff's discrimination, harassment, and retaliation claims alleged under Louisiana's Employment Discrimination law, La. Rev. Stat. §23:301, *et seq.*, which also include claims for constructive discharge, forced resignation, and denial of transfer; and (3) plaintiff's claims for defamation and

3

retaliation alleged under Louisiana's Whistleblower Statute,  La. Rev. Stat. §23:967, *et seq*.  All three "categories" of claims are alleged against both defendants.

Each defendant – Dauterive and HCA – previously filed a motion to dismiss.  In its previously-filed motion to dismiss, Dauterive moved to dismiss plaintiff's Title VII claims against it on grounds the foregoing claims had prescribed.  This Court agreed and dismissed plaintiff's Title VII claims – alleged against Dauterive – with prejudice, as prescribed.

Additionally, Dauterive moved to dismiss plaintiff's state law claims for discrimination, harassment, and retaliation, alleged under Louisiana's Employment Discrimination law, La. Rev. Stat. §23:301, *et seq*., including plaintiff's claims for constructive discharge, forced resignation, and denial of transfer, on grounds the foregoing claims had prescribed and on grounds the plaintiff had not provided sufficient notice to Dauterive of the pending claims before filing suit, a pre-requisite to filing suit that exists under Louisiana law.  While this Court concluded the plaintiff had not provided sufficient notice of her constructive discharge and forced resignation claims, and those claims were, therefore, dismissed for failure of the plaintiff to comply with the notice requirements of Louisiana employment discrimination law, the Court nevertheless concluded to the extent the plaintiff alleged additional discrimination, harassment, and retaliation claims, this Court could not determine whether such claims were prescribed.  Specifically, the Court concluded while some of the claims could have prescribed – *i.e.*, those that arose before August 25, 2007 – other claims that arose after August 25, 2007 might well not have prescribed.  Because Dauterive had failed to specifically identify which "claims" it sought to have dismissed on prescription grounds and whether those claims arose before or after the plaintiff filed her EEOC charge, the Court denied Dauterive's motion to dismiss plaintiff's state law claims on prescription grounds.

4

Finally, Dauterive moved to dismiss plaintiff's state law claims for retaliation and defamation against two Dauterive employees, alleged under Louisiana's Whistleblower Statute, La. Rev. Stat. §23:967, *et seq.*, on grounds the foregoing claims had prescribed. This Court agreed, noting the plaintiff had not specifically opposed that portion of Dauterive's motion, and the foregoing claims were dismissed with prejudice. *See* Memorandum Ruling, Doc. 30.

With respect to HCA's motion, which only dealt with the issue of whether HCA was plaintiff's employer, this Court found there were genuine issues of material fact that warranted further discovery and, therefore, denied the motion.

With the foregoing in mind, this Court now turns its attention to the second round of dispositive motions filed by the parties. In its pending motion for summary judgment, HCA argues discovery has been completed and there are no genuine issues of material fact for trial concerning HCA's employer status. Specifically, HCA argues it is *not* plaintiff's employer under Title VII or Louisiana state law, and therefore, there can be no liability against HCA for any claims asserted by plaintiff against HCA. In its motion for summary judgment, Dauterive seeks dismissal of plaintiff's denial of transfer claim alleged under Louisiana law, as well as plaintiff's state law claims of discrimination, harassment, and retaliation. In the instant motion, Dauterive separates plaintiff's state law claims into two categories – those arising prior to August 25, 2007, the date of plaintiff's first contact with EEOC (on grounds the claims that pre-date August 25, 2007 are prescribed), and those that post-date August 25, 2007 (on grounds those claims have no merit).

For the following reasons, HCA's Motion for Summary Judgment is GRANTED, and Dauterive's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

## II.   Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

The plain language of Rule 56(c) mandates the entry of summary judgment, after

6

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

. . . .

. . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

7

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

## III.   Law and Analysis

### A.   HCA's Motion for Summary Judgment

HCA seeks dismissal of plaintiff's racial discrimination, harassment, and retaliation claims under Title VII, plaintiff's state law discrimination claims under La. Rev. Stat. §23:301, *et seq.*, and plaintiff's claims under Louisiana's Whistleblower Statute, La. Rev. Stat. §23:967, on grounds such claims are only properly asserted against an "employer," and HCA was not plaintiff's "employer" at the time of plaintiff's allegations. Rather, HCA contends it is Dauterive Hospital's ultimate parent corporation and it does not own or operate Dauterive Hospital. HCA contends it did not compensate the plaintiff or control the terms of her employment, and there is no evidence HCA and Dauterive were plaintiff's joint employers.

In response, plaintiff asserts this Court has already determined there are genuine issues of material fact with respect to the issue of whether HCA was plaintiff's employer for purposes of her Title VII and state law claims against HCA. Plaintiff attempts to incorporate its opposition to HCA's first-filed Motion to Dismiss – which brief, this Court notes, is not tailored to the specific arguments advanced by HCA in the instant motion – in response to the instant motion for summary judgment.

While the plaintiff is correct that this Court previously ruled there were genuine issues of

8

material fact regarding whether HCA is plaintiff's employer pursuant to Title VII and Louisiana employment discrimination law, the precise ruling of this Court was that further discovery was warranted on this issue. HCA argues the necessary discovery has been conducted and elucidates the absence of a genuine issue for trial. Thus, to be precise, at no time did this Court rule HCA was foreclosed from presenting evidence and argument that it is not the plaintiff's employer, but rather, simply ruled discovery on that issue could take place.

In its motion for summary judgment, HCA argues plaintiff's contention that HCA was her employer is based on the following "assumptions," all of which HCA refutes:

- HCA paid Dauterive's bills
- HCA employed Alan Fabian, Dauterive's CEO
- HCA employed Neal Manuel, Director of Surgical Services at the Regional Medical Center of Acadiana
- HCA "controlled [plaintiff's] schedule" because Mr. Fabian sent out an email from HCA on one occasion stating pick-up shifts would have to be approved.
- Neal Manuel "hops" from HCA hospitals and allegedly stated he gave the "company" 20 years of service
- Candace Frioux's and Michele Broussard's email address end in "HCA"
- HCA evaluated plaintiff's performance and controlled her transfer requests through Mr. Manuel, Ms. Broussard, and Ms. Frioux because they had HCA email addresses and were "very close."

In support of its motion, HCA argues it did not pay Dauterive's bills; did not employ Alan Fabian, Dauterive's CEO; did not employ Neal Manuel, Dauterive's Director of Surgical Services at the Regional Medical Center of Acadiana, an HCA facility; did not control plaintiff's transfer request through Candace Frioux, Dauterive's emergency room director and plaintiff's supervisor, or Michelle Broussard, Dauterive's HR Director; and did not pay plaintiff's 401K plan. Additionally, HCA argues there is no evidence HCA controlled plaintiff's employment in any manner. Therefore, HCA contends it is entitled to judgment in its favor on all of plaintiff's claims

9

against it as a matter of law.

In response, plaintiff argues evidence gathered during discovery establishes HCA's "control of Dauterive," to wit:

- "Neal Manuel's chain of command ends at HCA"
- The "employee grievance procedure" provided that employees complain to HCA
- "Alan Fabian's chain of command also ends at HCA"
- "HCA directs Dauterive regarding its ethics and compliance program"
- New employees receive the HCA code of conduct
- Dauterive's acknowledgment card for receipt of the code of conduct by its employees is the same as HCA's
- The Securities and Exchange Commission report submitted by HCA states that it operates 169 hospitals
- The SEC Report also states the term "HCA" refers to all affiliated hospitals as well
- Plaintiff's 401K was "through HCA"
- Defendant Dauterive's name seems to be used interchangeably with HCA Dauterive
- HCA conducted job quality surveys at Dauterive
- Employees of HCA's affiliated hospitals refer to themselves as being employed by HCA
- Employees within the HCA network of hospitals often work at, and are shared with, multiple facilities within the network.
- Employees easily transfer from one facility to another within the HCA network.

Before this Court addresses the specific evidence presented by the plaintiff, this Court will address the legal standard to be applied in this matter in light of the fact the plaintiff alleges HCA was her employer for purposes of both federal and state law.

Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year." 42 U.S.C. §2000e(b). Based on the foregoing, HCA characterizes "employer" as the entity that provides compensation to or pays its employees, arguing Title VII's definition of employer is "similar" to Louisiana's definition of employer, which follows:

"Employer" means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an

employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. "Employer" shall also include an insurer, as defined in R.S. 22:46, with respect to appointment of agents, regardless of the character of the agent's employment. . .

La. Rev. Stat. §23:302(2) (West 2009).[2]

The jurisprudence, however, shows the Title VII and Louisiana state law definitions of "employer" for purposes of employment discrimination cases are quite different.  Although the statutory definition of "employer" under Title VII focuses on the number of employees a company employs and compensates, the Fifth Circuit has held the term "employer" as used in Title VII of the Civil Rights Act was meant to be liberally construed.  *Trevino v. Celanese Corp.*, 701 F.2d 397, 403 (5th Cir. 1983).  Thus, the Fifth Circuit has held "superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer." *Trevino*, 701 F.3d at 403.  The factors considered in determining whether distinct entities constitute an integrated enterprise are: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.  *Id.* at 403-04.  The Fifth Circuit and other courts applying this four-part standard in Title VII and related cases have focused on the second factor: centralized control of labor relations.  *Id.* at 407.  The critical question that courts ask with regard to this factor is: "What entity made the final decisions regarding employment matters related to the person claiming discrimination?"  *Id.*

---

[2] Although the whistleblower statute itself does not define employer, district courts within the Fifth Circuit have applied the definition of "employer" provided under Louisiana's Employment Discrimination Law, La. Rev. Stat. §23:302(2), to claims brought under the whistleblower statute, La. Rev. Stat. §23:967. *See, eg., Jones v. JCC Holding Co.*, 2001 WL 537001, *3 (E.D. La. May 21, 2001); *Langley v. Pinkerton's Inc.*, 220 F.Supp.2d 575, 580 (M.D. La. Sept. 4, 2002); *Jackson v. Xavier Univ. of Louisiana,* 2002 WL 1482756 (E.D. La. July 8, 2002).

In the context of parent companies and their subsidiaries, however, the Fifth Circuit has held evidence establishing common management and ownership between the parent company and its subsidiary – alone – is insufficient to establish single employer status. In *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997), the Fifth Circuit explained "[t]he doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees." In *Lusk*, the plaintiff, a former employee who had been terminated in a reduction in force, brought an action against her former employer and its parent corporation under the Age Discrimination in Employment Act ("ADEA"). The district court granted the parent corporation's motion for summary judgment on the issue of "single employer" status. On appeal, the Fifth Circuit noted:

> *Only evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary-domination similar to that which justifies piercing the corporate veil-is sufficient to rebut this presumption, see Johnson,* 814 F.2d at 981, and to permit an inference that the parent corporation was a final decision-maker in its subsidiary's employment decisions.

*Id.* at 778 (emphasis added).

The Fifth Circuit went on to state:

> Common management and ownership are ordinary aspects of a parent-subsidiary relationship. A parent corporation's possession of a controlling interest in its subsidiary entitles the parent to the normal incidents of stock ownership, such as the right to select directors and set general policies, without forfeiting the protection of limited liability. *Baker v. Raymond Int'l, Inc.,* 656 F.2d 173, 180-81 (5th Cir.1981). Thus, courts have recognized that the mere existence of common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer. *See, e.g., Frank,* 3 F.3d at 1364; *Rogers,* 7 F.3d at 583; *Johnson,* 814 F.2d at 980-82. *Some nexus to the subsidiary's daily employment decisions must be shown. See Schweitzer,* 104 F.3d at 765.

> The appellants argue that they established this nexus with evidence of interrelated operations and NII's involvement in the RIF plan. The interrelation of operations element of the single employer test ultimately focuses on whether the parent

12

corporation excessively influenced or interfered with the business operations of its subsidiary, that is, whether the parent *actually exercised* a degree of control beyond that found in the typical parent-subsidiary relationship. *Johnson*, 814 F.2d at 981-82; *see also Herman v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 971*, 60 F.3d 1375, 1383-84 (9th Cir.1995); *Rogers*, 7 F.3d at 582; *Armbruster v. Quinn*, 711 F.2d 1332, 1338 (6th Cir.1983). Thus, for example, the fact that NII (like any other parent corporation) ultimately benefitted from the activities of its subsidiaries, including the restructuring of FoxMeyer Drug's sales force, is irrelevant to whether their operations were interrelated. *See Frank*, 3 F.3d at 1362; *Rittmeyer v. Advance Bancorp, Inc.*, 868 F.Supp. 1017, 1022 (N.D.Ill.1994). "Attention to detail," not general oversight, is the hallmark of interrelated operations. *See Johnson*, 814 F.2d at 982.

> *Along these lines, relevant factors suggesting the existence of interrelated operations include evidence that the parent: (1) was involved directly in the subsidiary's daily decisions relating to production, distribution, marketing, and advertising; (2) shared employees, services, records, and equipment with the subsidiary; (3) commingled bank accounts, accounts receivable, inventories, and credit lines; (4) maintained the subsidiary's books; (5) issued the subsidiary's paychecks; or (6) prepared and filed the subsidiary's tax returns.*

*Id.* (emphasis added). In *Lusk*, the court went on to note "[t]his is not to say, of course, that the existence of any of these factors is alone dispositive of single employer status or even a finding of interrelated operations." 129 F.3d at 778.

In contrast, Louisiana's definition of employer focuses on the issue of *which entity pays the employee* and there is no corresponding Louisiana jurisprudence holding Louisiana's focus in the context of employer status is the issue of control, as it is under the federal scheme. Indeed, it appears the Fifth Circuit has never squarely addressed this issue, but federal courts applying Louisiana law and Louisiana state courts have consistently held the definition of "employer" under Louisiana law for purposes of employment discrimination cases has been specifically defined, and to satisfy the definition of employer under Louisiana law, one must:

> (1) receive services from an employee and return give compensation to that employee; and (2) meet the requisite number of employees prescribed by the statute.

13

La.Rev.Stat. 23:302(2).

*Seal v. Gateway Companies, Inc.*, 2002 WL 10456, 4 (E.D. La. 2002) (J. Englehardt); *see also Hornsby v. Enterprise Transportation Co.*, 987 F.Supp. 512, 515 (M.D. La. 1997) (J. Polozola) (interpreting La. Rev. Stat. §23:1006, which has been repealed, but which, along with La. Rev. Stat. §51:2231, *et seq.*, also repealed, forms the basis of the Louisiana Employment Discriminmation Law, La. Rev. Stat. §23:301, *et seq.*); *Deplessis v. Warren Petroleum, Inc.*, 672 So.2d 1019 (La. App. 4th Cir. 1996); *Langley v. Pinkerton's Inc.*, 220 F.Supp.2d 575 (M.D. La. 2002).

> Noted the Court in *Duplessis*:

> Although the test in Louisiana to determine if an employer-employee relationship exists relates to "right of control," the legislature gave "employer" a specific definition which controls in an action for intentional discrimination in employment. La. R.S. 23:1006. This Court considered whether the defendant paid the plaintiff's wages and withheld federal, state, unemployment or social security taxes from his check. *Onyeanusi v. Times Picayune Publishing Corp.*, 485 So.2d 622 (La.App. 4th Cir.1986).

672 So.2d at 1022, *cited in Seal* 2002 WL 10456, 4.

Considering the foregoing, this Court concludes under Louisiana employment discrimination law, this Court should focus more closely upon whether the plaintiff has presented evidence that HCA paid the plaintiff, rather than the issue of control, to determine whether HCA is plaintiff's "employer" for purposes of plaintiff's state law claims of discrimination, harassment, and retaliation.

### 1.    Employer Status under Title VII

In the instant case, HCA has presented evidence that it did not have control over plaintiff's employment at Dauterive, arguing HCA did not pay Dauterive's bills; did not employ Mr. Fabian, Dauterive's CEO; did not employ Neal Manuel, a co-worker of the plaintiff; did not control plaintiff's transfer request through Ms. Frioux (Dauterive' emergency room director and plaintiff's

14

supervisor) or Ms. Broussard (Dauterive's HR Director); and did not pay plaintiff's 401K plan. This Court concludes HCA has met its initial burden of showing there is no genuine issue of material fact with respect to this issue, and the burden then shifts to the plaintiff to produce evidence or designate specific facts showing the existence of a genuine issue for trial. This Court will now evaluate the evidence presented by plaintiff to determine whether she has satisfied her burden of producing specific facts showing the existence of a genuine issue for trial. After review of plaintiff's brief and her attachments, this Court finds the "evidence" does not exist in the location cited by the plaintiff; does not address the issue of "control" by HCA over Dauterive Hospital; or does not warrant a finding of control pursuant to the jurisprudence.

For example, plaintiff argues the "employee grievance procedure" – a phrase that is not defined or explained and which lacks the key information of which employee plaintiff is referring to (*i.e.*, Dauterive employees? HCA employees?) – "provided that employees complain to HCA." Plaintiff cites this Court to the deposition of Neal Manuel, pp. 74 and 75 and "3", in support of this argument. However, pages 74 and 75 of Mr. Manuel's deposition do not discuss grievance procedures, and this Court does not know what plaintiff is referring to when she cites to "3." To the extent the plaintiff intends to cite this Court to Exhibit 3, attached to her motion, this Court notes Exhibit 3 is a three-page, single spaced document entitled "Dauterive Hospital Employee Assistance Program." This Court has not been directed to any specific portion of this document that supports the plaintiff's argument that "employees (which further begs the question, employees of which company?) complain to HCA."

Additionally, plaintiff argues "employees of HCA affiliated hospitals refer to themselves as being employed by HCA." To support this, the plaintiff cites the deposition testimony of Alan

15

Fabian, pages 64-65.  Nowhere on these pages does it indicate *"employees"* of "HCA affiliated hospitals" refer to themselves as "being employed by HCA."  Mr. Fabian does, however, testify as follows:

> Q:     Have you ever sat in on this orientation when the discrimination, harassment or retaliation was being presented?
>
> A:     Not recently.
>
> Q:     Well, when did you?
>
> A:     When I was a new employee with HCA.
>
> Q:     When was that?
>
> A:     When I moved – 2001, when I moved to the Southwest Medical Center, an affiliate of HCA.[3]

The foregoing testimony might, at best, establish that Mr. Fabian, on the occasion of his deposition, referred to himself as an employee of HCA.  However, this Court concludes the foregoing testimony does not support plaintiff's argument that *"employees"* of HCA-affiliated hospitals "refer to themselves as being employed by HCA."

Similarly, the plaintiff argues an SEC report states "the term 'HCA' refers to all 'affiliated hospitals' as well."  To support this argument, the plaintiff attaches a four-page, single-spaced document entitled "Securities and Exchange Commission Form 10-K," apparently pertaining to "HCA, Inc.," with no further description or discussion.

Unsubstantiated assertions are not competent summary judgment evidence.  *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports

---

[3] *See* deposition of Alan Fabian, pp. 64-65.

16

his or her claim. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115

S.Ct. 195, 130 L.Ed.2d 127 (1994). "Rule 56 does not impose upon the district court a duty to sift

through the record in search of evidence to support a party's opposition to summary judgment."

*Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832,

113 S.Ct. 98, 121 L.Ed.2d 59 (1992). The plaintiff simply has not provided sufficient information

by which this Court can evaluate and assess the impact of this specific piece of evidence in making

its determination.

Additional evidence presented by plaintiff similarly does not satisfy plaintiff's burden. For

instance, plaintiff argues Dauterive's name "seems to be used interchangeably with HCA Dauterive."

In support of this assertion, the plaintiff cites to and attaches a document entitled "Profile Series

Employment Report," a confidential employment report containing information about the plaintiff.

On the first page of the report, there is a box containing the words "HCA Dauterive Hospital" and

an address for "Attn: Trisha J. Tatman." No additional explanatory information concerning this

report is provided.

The Fifth Circuit has stated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the
> material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by
> only a 'scintilla' of evidence. We resolve factual controversies in favor of the
> nonmoving party, but only when there is an actual controversy, that is, when both
> parties have submitted evidence of contradictory facts. We do not, however, in the
> absence of any proof, assume that the nonmoving party could or would prove the
> necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical
> evidence is so weak or tenuous on an essential fact that it could not support a
> judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal

quotations omitted). Plaintiff's argument that the terms "Dauterive" and "HCA Dauterive" "*seem*

17

*to be* used interchangeably" is simply not sufficiently substantiated by the plaintiff to create a genuine issue for trial.

Additionally, certain evidence presented by plaintiff does not address or otherwise evidence the requisite control by HCA over Dauterive. Indeed, the following "evidence" – which is set forth in a list format with no discussion – does not provide this Court with sufficient information regarding the degree of control exerted by HCA over Dauterive sufficient to find that the two corporations are joint employers of the plaintiff:

- Neal Manuel's chain of command ends at HCA

- Alan Fabian's chain of command also ends at HCA.

- "new employees" (again, this begs the question – "new employees" of which corporation? Dauterive Hospital? HCA?) receive the HCA code of conduct

- Dauterive's "acknowledgment card" for the receipt of the code of conduct by its employees is the same as HCA's

- the SEC report states HCA "operates" 169 hospitals

- the term "HCA" refers to all "affiliated hospitals" as well ("as well" as what?)

- HCA conducted job quality surveys at Dauterive

The Fifth Circuit has made clear a certain degree of interrelation of operations is inherent in the parent-subsidiary relationship. Thus, this element of the single employer test ultimately focuses on whether the parent corporation *excessively influenced or interfered with the business operations of its subsidiary*, that is, whether the parent *actually exercised* a degree of control beyond that found in the typical parent-subsidiary relationship. The fact that "new employees" (presumably, of Dauterive) receive a copy of the parent company's code of conduct and that Dauterive's "acknowledgment card" for the receipt of the code of conduct by its employees is the same as HCA's

"acknowledgment card" do not demonstrate excessive influence or interfere by HCA with the business operations of Dauterive. Nor does the fact that the SEC report states HCA "operates" 169 hospitals or conducted job quality surveys at Dauterive establish the requisite control. Finally, the fact that two employees of Dauterive can technically trace their supervisors all the way to the CEO of HCA, without demonstrating that the CEO of HCA has any control whatsoever over the work performed by these employees, does not establish the requisite control.

Again, this Court must focus on evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary – domination similar to that which justifies piercing the corporate veil – and which permits an inference that the parent corporation was a final decision-maker in its subsidiary's employment decisions. *Lusk,* 129 F.3d at 778. This Court concludes the foregoing evidence proffered by plaintiff does not suggest such control.

For example, plaintiff argues her 401K was "through HCA." This would, at first blush, appear to be a disputed fact, because HCA contends it did not pay plaintiff's 401K plan. Although HCA acknowledges the "HCA Rewards for Healthy Work Environment" is part of HCA affiliates' benefits program that include a 401K plan, HCA contends Dauterive Hospital Corporation – not HCA – is responsible for all of the funds that are matched when an employee participates in the 401K program, and all compensation provided for the retirement portion of the plan is the responsibility of Dauterive. In response, all the plaintiff offers to refute the foregoing is a document entitled "Quarterly 401K Plan Statement," in which the "Account Summary" indicates the plan at issue is "The HCA 401(k) Plan." The plaintiff offers no evidence that HCA funded the 401K plan. Therefore, the plaintiff's "evidence" does not establish the requisite control.

Similarly, plaintiff argues "HCA directs Dauterive regarding its ethics and compliance

19

program." The cited testimony supporting this argument is the testimony of Alan Fabian, Dauterive's CEO, who testified "our parent company provides the hospitals direction on the ethics and compliance program." However, a parent company providing "guidance" to a subsidiary on ethics and compliance matters does not establish the requisite degree of control. In *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606 (5th Cir. 1999), the court was faced with the issue of whether parent company Anheuser-Busch and subsidiary Precision were "single employers" for purposes of Title VII. The plaintiff argued the following evidence established that Anheuser-Busch was her employer: (1) Anheuser-Busch approved Precision's awards for accident-free work records; (2) Skidmore received a corporate letter of commendation that referred to her as an Anheuser-Busch employee; (3) *Anheuser-Busch gave production directives to Precision*; (4) an Anheuser-Busch vice-president held meetings with Precision's employee safety team and presided over presentations on expansion and purchase of new presses; and (5) legal counsel at Anheuser-Busch handled Skidmore's EEOC charge and harassment suit.  Skidmore, 188 F.3d at 617.  In rejecting the plaintiff's argument, the Fifth Circuit noted:

> The evidence to which Skidmore points does not support a finding that Anheuser-Busch was her employer for Title VII purposes. The primary *Trevino* factor concerns which entity made the employment decisions regarding Skidmore. Brian Ashworth, Precision's director of human resources, testified that, although it paid an Anheuser-Busch department to act as third-party administrator of its benefit programs, Precision offered its own employee benefit packages. He testified that Precision hired, fired, promoted, and demoted its own employees without consulting Anheuser-Busch, and that Precision negotiated its own union contracts without consulting Anheuser-Busch. Skidmore's evidence does not contradict Ashworth's testimony. Nor has Skidmore shown Anheuser-Busch participated in Precision's labor decisions, or that Anheuser-Busch and Precision intermingled their operations and management functions. The district court therefore erred in failing to grant judgment as a matter of law to Anheuser-Busch on Skidmore's claim for sexual harassment.

*Id.* at 617.  Thus, the Fifth Circuit considered and rejected the plaintiff's assertion that the parent

20

company's production directives to its subsidiary established the requisite control in the absence of other evidence showing the parent company made employment decisions regarding the plaintiff. Indeed, the Fifth Circuit has held "[a] parent corporation's possession of a controlling interest in its subsidiary entitles the parent to the normal incidents of stock ownership, such as the right to select directors and **set general policies**, without forfeiting the protection of limited liability. *Baker v. Raymond Int'l, Inc.,* 656 F.2d 173, 180-81 (5th Cir.1981) (emphasis added).

Similarly, in the instant case, the fact that HCA provides directive to its subsidiaries, including Dauterive, concerning ethics and compliance, does not mandate that HCA forfeit the protection of limited liability.

Finally, this Court addresses the issue of "shared employees." Plaintiff argues "employees within the HCA network of hospitals often work at, and are shared with, multiple facilities within the network." This Court notes evidence of "shared employees, services, records, and equipment [of the parent company] with the subsidiary" can establish the requisite degree of control. However, the foregoing is not what the plaintiff is arguing. In the cited testimony that plaintiff offers to support this argument, Mr. Fabian testified as follows:

> Q:    Are you familiar with the term "shared employee"?
> A:    I am.
> Q:    What does that mean?
> A:    That's an employee who may work at multiple facilities in our network.
> Q:    Who pays the shared employee?
>
>              Objection, form.
>
> A:    In our system, it's the home facility.
> Q:    And how is that determined?
> A:    It's where the employee is – what we consider their home hospital.
> Q:    And who determines which is the home hospital of the shared employee?
> A:    It normally is determined by the employee. It's the hospital that they work

21

| | at. |
|---|---|
| Q: | So the employee tells his employer which of the facilities is going to be his home facility? |
| A: | Normally it's the facility that the employee works at first and continues to work at, because you will have employees who work at one hospital, such as myself, and then transfer to a sister hospital such as Regional Medical Center. |
| Q: | And by "sister hospital," you mean one that's affiliated with HCA? |
| A: | Yes. |
| Q: | Do you have any shared employees at Dauterive? |
| A: | Yes, we do. |
| Q: | How many? |
| A: | I do not know that number.[4] |

Thus, the foregoing testimony establishes that *employees within the HCA network of hospitals often work at different facilities within the network*. The foregoing testimony does not establish that the employees of HCA are also the employees of Dauterive, which might indicate a degree of control by HCA over Dauterive.

In all, the plaintiff has presented evidence that there is a relationship between HCA and Dauterive, and, indeed, there would be, as HCA is the parent company of Dauterive. However, the plaintiff has presented no evidence showing HCA was involved directly in Dauterive's daily decisions relating to production, distribution, marketing, and advertising; shared employees, services, records, and equipment with Dauterive; commingled bank accounts, accounts receivable, inventories, and credit lines; maintained Dauterive's books; issued Dauterive's paychecks; or prepared and filed Dauterive's tax returns. Most importantly, plaintiff has failed to put forth sufficient evidence that HCA was a final decision-maker in Dauterive's employment decisions, either with respect to this particular plaintiff, or with respect to any Dauterive employee. Considering the foregoing, this Court concludes the plaintiff fails to put forth sufficient evidence of Dauterive's control over plaintiff to

---

[4] *See* Deposition of Alan Fabian, Exhibit "4" to plaintiff's opposition brief, Doc. 70, at pp. 41-43.

defeat summary judgment on plaintiff's Title VII claims alleged against HCA.

### 2.    Employer Status under Louisiana Law

As stated herein, to satisfy the definition of employer under Louisiana's employment discrimination statute, the plaintiff must: (1) receive services from an employee and return give compensation to that employee; and (2) meet the requisite number of employees prescribed by the statute. *Seal*, 2002 WL 10456, 4; *see also* La. Rev. Stat. §23:302(2); *Hornsby v. Enterprise Transportation Co.,* 987 F.Supp. 512, 515 (M.D. La.1997) (J. Polozola).

In the instant case, as in *Seal*, there is not a scintilla of evidence presented by the plaintiff that HCA paid the plaintiff anything, nor is there a suggestion that the plaintiff herself received any compensation directly from HCA.  Consequently, in *Seal*, the court stated:

> Plaintiff has not satisfied her burden under F.R.C.P. Rule 56(f), which requires that the party opposing summary judgment on the basis of additional discovery submit affidavits to the Court setting forth specific facts which demonstrate that additional discovery might rebut the movant's showing of the absence of a genuinely disputed material issue of fact. Plaintiff has offered no good reason for her failure to respond in any fashion to Gateway's requests for admissions. The issue of the plaintiff's compensation is not information exclusively within the control of the defendant. Indeed, plaintiff should know whether or not she was ever compensated for her services directly from Gateway, or a Gateway/Service Zone joint venture account. Whether Gateway or Service Zone or a joint venture paid her salary, withheld taxes, paid her benefits, and the like, are simply not matters the plaintiff-payee would not presently know.

*Seal*, 2002 WL 10456, 7.  Similarly, in the instant case, plaintiff has offered no good reason for her failure to submit evidence showing which entity paid her.  Considering the foregoing, this Court concludes the plaintiff has not sustained her burden to defeat summary judgment on this issue.

As this Court concludes the plaintiff has presented no evidence of control under federal law, or that HCA compensated her for her services under Louisiana law, this Court need not address the

alternative arguments advanced by HCA in support of its motion for summary judgment on grounds it is not liable to plaintiff because it is not plaintiff's employer. Considering the foregoing, plaintiff's claims against HCA under Title VII, Louisiana's Employment Discrimination Law, and Louisiana's Whistleblower Statute are DISMISSED WITH PREJUDICE. HCA's motion for attorneys's fees, costs, and expenses "in bringing this motion" is DENIED for failure of HCA to cite this Court to any authority supporting its argument that it is entitled to same.

### B.   Dauterive's Motion for Summary Judgment [Doc. 59]

To reiterate, this Court has dismissed plaintiff's Title VII claims against Dauterive on grounds such claims are prescribed, and has dismissed plaintiff's claims for constructive discharge and forced resignation under the Louisiana Employment Discrimination Law on grounds plaintiff failed to provide notice of these claims to Dauterive and failed to exhaust the administrative process. Additionally, this Court dismissed plaintiff's defamation and retaliation claims against two Dauterive employees under the Louisiana Whistleblower Statute on grounds such claims are prescribed. Thus, the only claims that remain against Dauterive are plaintiff's state law claims for discrimination, harassment, and retaliation under the Louisiana Employment Discrimination Law. In the instant motion for summary judgment, Dauterive seeks dismissal of the foregoing claims on grounds they are prescribed and/or have no merit. Additionally, Dauterive contends that much like plaintiff's claims for constructive discharge and forced resignation, plaintiff's claim for denial of transfer under the Louisiana Employment Discrimination Law should be dismissed because plaintiff failed to properly provide notice of such claim to Dauterive.

### 1.   Dauterive's Motion to Dismiss Plaintiff's "Denial of Transfer" Claim

Dauterive seeks dismissal of plaintiff's claim for "denial of transfer," which is alleged under

24

Louisiana's Employment Discrimination law, La. Rev. Stat. §23:301, *et seq*. As an initial matter, this Court takes some issue with Dauterive's argument that it included plaintiff's denial of transfer claim in its previous motion to dismiss. This Court notes in the section of Dauterive's prior motion addressing notice and prescription, Dauterive referred only to plaintiff's "discrimination" claims, without delineating any of the plaintiff's specific claims for "discrimination," whether they be claims for retaliation, constructive discharge, forced resignation, or denial of transfer. Rather, it was not until it filed its *reply* brief that Dauterive mentioned the denial of transfer claim. As the mover, Dauterive has the burden to present sufficient argument and/or evidence that a claim should be dismissed. Nowhere in the actual motion to dismiss does Dauterive specifically move for dismissal of a denial of transfer claim.

Notwithstanding the foregoing, this Court notes Dauterive did address plaintiff's denial of transfer claim in its reply brief. Dauterive argued the first notice it received regarding plaintiff's state law discrimination claims was on March 27, 2009, when it was served with the plaintiff's lawsuit. Although plaintiff argued notice of her state law claims was provided via her EEOC charge, this Court noted – and plaintiff provided no evidence or argument to the contrary – that in her EEOC charge, plaintiff indicated her claims were for race discrimination and retaliation – but not constructive discharge/forced resignation or denial of transfer.

Prior to filing a lawsuit under the Louisiana anti-discrimination statute, a plaintiff must give the proposed defendant written notice that she believes she has been discriminated against at least 30 days before initiating court action. La. Rev. Stat. §23:303(C). Louisiana state and federal courts applying Louisiana law have held the filing of an EEOC charge of discrimination satisfies this notice requirement, but limits the state claim to the alleged discrimination detailed in the EEOC charge, and

25

this Court agrees, particularly as notice is what is at issue.[5] *See, e.g., Johnson v. Harrah's Entertainment, Inc.*, 2005 WL 3541139, 4 (E.D. La. 2005) (MJ Knowles); *Dorgan v. Foster*, 2006 WL 2067716, 5 (E. D. La. 2006) (J. Roby), *citing Dunn v. Nextel So. Corp.*, 2002 WL 1401673, at * 1 (M.D.La. 2002) (J. Parker) (dismissing plaintiff's employment discrimination complaint without prejudice for failure to allege compliance with Section 23:303(C)); *Brown v. Menszer*, 2000 WL 1228769, at *2 (E.D.La. 2000) (J. Duval) (rejecting plaintiff's argument that "vague verbal warning" could substitute for written notice under the previous notice statute and dismissing plaintiff's handicap discrimination claim for failure to comply with notice provision); *Malakoff v. Alton Ochsner Med. Fd.*, 2000 WL 805232, at *2 (E.D. La. 2000) (J. Mentz) (plaintiff's state law discrimination claim was "procedurally barred" by her failure to comply with Section 23:303(C)).

The United States Supreme Court has deemed a "denial of transfer" a discrete employment action, much like termination, a failure to promote, or a refusal to hire. *See, e.g., Ledbetter v. Goodyear Tire & Rubber C., Inc.*, 550 U.S. 618, 628, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007) ("termination, failure to promote, denial of transfer, [and] refusal to hire" are examples of such discrete employment acts), *citing National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In her EEOC charge, the plaintiff checked the boxes for discrimination based on "race" and "retaliation" and further particularly described the discriminatory acts against her as (1) a demotion; (2) unfair discriminatory actions; and (3) harassment. The EEOC

---

[5] Compliance with the notice component of this statute requires the plaintiff to give written notice, within thirty days before he or she files suit, of the plaintiff's intent to sue and the details of the alleged discrimination. *Plaisance v. Airgas-Gulf States, Inc.*, 2008 WL 1730535, 4 (E.D. La. 2008), *citing Schildkraut v. Bally's Casino New Orleans, LLC*, 2004 WL 2348321 at *11 (E.D.La.2004). Federal courts interpreting this rule have held the filing of an EEOC charge of discrimination may serve as the written notice required by Section 23:303(C) if it "effectively accomplishe[s] the same goals as the statutory notice under the state law." *See id.* (citing *Trahan v. Lowe's, Inc.*, 2002 WL 1560272, at *6 (E.D.La.2002); *Parquet v. Universal Health Servs., Inc.*, 2003 WL 145429, at *4 (E.D.La.2003)).

charge does not mention a denial of transfer, just as it did not mention constructive discharge/forced resignation.  Again, within the Court's addressing this issue, with which this Court agrees, for the filing of an EEOC charge to constitute notice of a particular claim to the defendant, the charge must "detail the alleged discrimination." *See Dorgan v. Foster*, 2006 WL 2067716 (E.D. La. 2006); *citing Mayes v. Office Depot, Inc.*, 292 F. Supp. 2d 878, 889 (W.D. La. 2003) (J. Hicks) (applying Louisiana law, filing an EEOC charge of discrimination satisfies the notice requirement, but limits the state claim to the alleged discrimination detailed in the EEOC charge).

Because the plaintiff did not include claims for employment actions deemed in the nature of discrete employment actions, by the United States Supreme Court (here, her claim for denial of transfer as a basis for her retaliation or race discrimination claims) in her EEOC charge, plaintiff's EEOC charge cannot constitute notice of her denial of transfer claim to Dauterive.  Consequently, plaintiff's denial of transfer claim is DISMISSED WITHOUT PREJUDICE for failure of the plaintiff to provide notice of such claim to Dauterive and for failure to exhaust her administrative remedies with respect to that claim.

Additionally, this Court notes Louisiana and federal courts interpreting La. Rev. Stat. §23: 303(C) have dismissed claims for lack of notice both with and without prejudice.  In its previous ruling, this Court dismissed plaintiff's state law claims for constructive discharge/forced resignation with prejudice.  However, neither party has briefed the issue, therefore, out of an abundance of caution, this Court AMENDS it prior ruling and dismisses plaintiff's state law claims for constructive discharge/forced resignation WITHOUT PREJUDICE at this juncture.

### 2.  Plaintiff's Request that Court Revive All of Her Claims

In response to Dauterive's motion, the plaintiff argues additional discovery conducted

27

between the time of the Court's ruling on Dauterive's prior motion to dismiss and the filing of the

instant motion for summary judgment shows the "plaintiff submitted to the EEOC detailed narratives

regarding every single incident she now complains of." Thus, plaintiff argues – somewhat vaguely

– that all of her claims that have been dismissed – namely, her Title VII claims and her state law

claims for constructive discharge/forced resignation and denial of transfer – should be revived. To

support her argument, the plaintiff attaches copies of what appear to be chronological, diary-type

narratives explaining the alleged discriminatory actions of Dauterive.   Plaintiff alleges she

supplemented her August 25, 2007 EEOC charge with the foregoing narratives in September,

October, and November 2007, which the plaintiff intended to be included in the EEOC's

investigation. Plaintiff argues the EEOC's failure to amend the plaintiff's EEOC charge, presumably

to add her claims for constructive discharge/forced resignation and denial of transfer, or to complete

an additional charge based on the foregoing, cannot be imputed to the plaintiff to her detriment.

Considering the foregoing, the plaintiff argues she:

> has exhausted her administrative remedies regarding her constructive discharge
> claim, as well as any other instances of retaliation under title VII of the Civil, Rights
> Act that occurred after August 25, 2007, original submission to the EEOC.
> Therefore, this Honorable Court should set aside the part of its prior ruling, Rec. Doc.
> 30, dismissing those claims for failure to exhaust EEOC administrative remedies.
> In addition, as plaintiff timely put the EEOC on notice of every single one of her
> claims, she has also satisfied the notice requirements of La. R.S. 23:303(C).
> Consequently, plaintiff respectfully requests that the Court set aside the parts of its
> previous Ruling, Rec. Doc. 30, p. 24, finding that plaintiff's EEOC filing did not
> provide notice regarding the constructive discharge.

The plaintiff's argument is unpersuasive. First, this Court notes, with respect to plaintiff's

Title VII claims against Dauterive for constructive discharge/forced resignation and denial of

transfer, this Court did not dismiss the foregoing claims for failure to file an EEOC charge against

Dauterive within the 300-day filing period, as plaintiff appears to suggest in her opposition brief.

28

Rather, this Court dismissed plaintiff's Title VII claims on grounds plaintiff *failed to timely file suit* against Dauterive within the 90-day limitations period. *See* Doc. 30, p. 19. Therefore, plaintiff's argument on this point cannot revive her Title VII claims.

With respect to plaintiff's state law claims of constructive discharge/forced resignation and denial of transfer, asserted pursuant to the Louisiana Employment Discrimination Law, in its prior motion to dismiss, Dauterive contended plaintiff did not include claims for constructive discharge/forced resignation and denial of transfer in her EEOC charge, and therefore, plaintiff did not provide timely notice of those claims to Dauterive. *Plaintiff did not dispute that portion of Dauterive's motion.* As stated previously, this Court noted the plaintiff presented no argument that her claims of constructive discharge and forced resignation are "like or related to [the] allegations contained in the [EEOC] charge." Therefore, this Court concluded plaintiff failed to provide Dauterive with notice of her constructive discharge and forced resignation claims and failed to exhaust administrative remedies with respect to her constructive discharge and forced resignation claims. For the same reasons, the Court herein rules plaintiff's denial of transfer claims are similarly barred.

In its reply brief, Dauterive argues plaintiff's current request to set aside portions of the Court's prior ruling dismissing plaintiff's constructive discharge/forced resignation claims under both Title VII and Louisiana state law is untimely and not warranted by the facts or law. Plaintiff provides no jurisprudential or statutory authority under which this Court should modify any of its prior rulings. Dauterive, on the other hand, argues any request to set aside this Court's prior rulings must be made under either Rule 59(e) or Rule 60 of the Federal Rules of Civil Procedure. Dauterive argues to the extent the request is considered under Rule 59 of the Federal Rules of Civil Procedure,

it is untimely, as a motion for reconsideration under Rule 59(e) must be filed within ten days after the entry of judgment. This Court agrees.[6] Dauterive further argues to the extent the motion is urged under Rule 60(b), grounds do not exist for the relief requested.

Under Rule 60(b), a party may move for relief from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief Fed. R. Civ. P. 60(b). Although the plaintiff does not cite to Rule 60 as the source of the relief she seeks, Dauterive invokes Rule 60(b) in light of the plaintiff's attempts to introduce the narratives in question, which Dauterive refers to as "newly discovered evidence," particularly in light of the fact that the plaintiff relies on a case in which the Court invoked Rule 60(b) and "newly discovered evidence" in setting aside a prior ruling dismissing a discrimination claim. *See Staples v. Reckamp*, 2006 WL 3247104 (E. D. La. 2006) (J. Drell) (allowing plaintiff to supplement record after filing of first motion for summary judgment where discovery had not ended at the time of the first filing).

---

[6] This Court notes there is no such motion under the federal rules as a "motion for reconsideration." However, Rule 59(e) permits district courts to alter or amend judgment. Under the rule, district courts have substantial discretion in determining whether to grant or deny such a motion. See *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 276 (5th Cir. 2000); *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993). The jurisprudence shows Rule 59(e) recognizes only three grounds on which to alter or amend reasons for judgment: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Schiller v. Physicians Resource Group, Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

This Court has question as to whether the analysis in the instant case is properly considered under Rule 60(b), as the Court questions whether its prior ruling dismissing plaintiff's constructive discharge and forced resignation claims is, indeed, a final judgment or order for purposes of Rule 60(b). However, setting aside this issue without deciding it, this Court makes the following findings. First, the narratives submitted by the plaintiff are not "newly discovered evidence." Indeed, while Dauterive provided a copy of the EEOC file to the plaintiff, which file contained a copy of the plaintiff's narratives, the narratives were, in fact, authored by the plaintiff and would have been in her possession long before she filed suit. Therefore, this Court concludes the narratives in question are not "newly discovered evidence" for purposes of Rule 60(b).

Furthermore, plaintiff has framed her argument that the narratives should be read to supplement her EEOC charge – and therefore all of her claims should be revived, including her state law claims for constructive discharge/forced resignation and denial of transfer – *under jurisprudence addressing Title VII.* As this Court has already noted, the plaintiff's Title VII claims were dismissed for failure to timely file suit in federal court, while plaintiff's constructive discharge and forced resignation claims were dismissed for failure to provide timely notice to Dauterive. Any attempt to revive plaintiff's constructive discharge and forced resignation claims must be analyzed under the requirements of La. Rev. Stat. §23:303(C), which requires thirty days' notice of discrimination before the commencement of court action, as follows:

> C. A plaintiff who believes he or she has been discriminated against, and who intends to pursue court action shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action, shall detail the alleged discrimination, and both parties shall make a good faith effort to resolve the dispute prior to initiating court action.

La. Rev. Stat. §23:303(C) (West 2010).

31

As this Court explained in its prior ruling, Dauterive's first notice of plaintiff's state law discrimination claims was on March 27, 2009, when Dauterive was served with the plaintiff's lawsuit.  Nevertheless, plaintiff had filed charges with the EEOC on August 25, 2007, wherein plaintiff named Dauterive Hospital as her employer and checked the appropriate boxes indicating claims of both race discrimination and retaliation – but not constructive discharge/forced resignation, or denial of transfer.

The question presented by the instant motion is whether the plaintiff's narratives, which plaintiff appears to argue she only just became aware of because they were only recently produced by Dauterive during discovery, sufficiently supplemented the plaintiff's original EEOC charge so as to constitute notice of the plaintiff's constructive discharge/forced resignation and denial of transfer claims *to Dauterive* within the prescribed time-period. This Court concludes no such notice of the foregoing claims was timely provided *to Dauterive*.  Federal district courts in Louisiana interpreting this notice provision of Louisiana law have consistently held a claim under the statute *must be dismissed* if the plaintiff failed to comply with the notice provision, *unless the plaintiff filed a charge of discrimination with the EEOC within the appropriate time period,* **which effectively accomplished the same goals as the statutory notice under state law**, and this Court agrees. *See Dorgan v. Foster*, 2006 WL 2067716, 5 (E. D. La. 2006), *citing Dunn v. Nextel So. Corp.,* CIV.A.01-691-A, 2002 WL 1401673, at * 1 (M.D.La. 2002) and cases referenced on page 26 of this Ruling.

From the caselaw, it is evident courts interpreting the notice statute have allowed the timely processing of an EEOC charge to provide sufficient notice, however, the courts have been careful to point out that to serve as notice, the EEOC charge must **effectively accomplish the same goals as the statutory notice under state law**. Under Section 23:303(C), notice must be provided to the

32

person who has allegedly discriminated (in this case, Dauterive), providing a detailed allegation of the discrimination, so that both parties may "make a good faith effort to resolve the dispute prior to initiating court action." La. Rev. Stat. §23:303(C) (West 2010). In the instant case, while plaintiff may have provided her narratives to the EEOC, and the EEOC appears to have received the narratives,[7] the plaintiff fails to show the constructive discharge/forced resignation and denial of transfer claims were actually a part of the EEOC's investigation. Additionally, the plaintiff has not provided evidence, acceptable upon summary judgment, establishing that she provided written notice of the constructive discharge/forced resignation and denial of transfer claims *to Dauterive*, her employer and the alleged discriminator. Because there was no notice of these claims prior to the filing of plaintiff's lawsuit, Dauterive was not on notice that plaintiff intended to sue Dauterive for constructive discharge/forced resignation and denial of transfer, and, thus, no opportunity for the parties to resolve these claims prior to judicial intervention, which is the stated purpose of Section 23:303(C).

Considering the foregoing, even if this Court were to assume the narratives submitted by the plaintiff in support of her request that this Court set aside its prior ruling dismissing are "newly discovered evidence" within the purview of Rule 60(b), this Court concludes the plaintiff, nevertheless, fails to carry her burden of showing she complied with the notice requirements of Section 23:303(C). Accordingly, this Court declines to set aside its prior ruling dismissing plaintiff's constructive discharge/forced resignation claims for failure to provide notice to Dauterive and similarly concludes plaintiff did not provide timely notice of her denial of transfer claim to

---

[7] This Court notes the copies of these narratives provided by the plaintiff bear a stamp stating "Received EEOC New Orleans District Office." Although a date of "Nov. 15" can partially be read, the year of receipt cannot be read. See plaintiff's exhibit 2, attached to plaintiff's opposition brief.

Dauterive.  Consequently, this request of the plaintiff is DENIED.

3.    **Dauterive's Motion to Dismiss Plaintiff's State Law Claims of Discrimination, Harassment, and Retaliation Before August 25, 2007**

In the instant case, the plaintiff filed her EEOC charge on August 25, 2007, *before* she resigned from employment on November 2, 2007.  In its prior motion to dismiss, Dauterive contended, pursuant to La. Rev. Stat. §23:303(D),[8] plaintiff's state discrimination claims would have been tolled for six months commencing with the first date of contact with the EEOC – August 25, 2007 – and expiring on February 25, 2008.  Dauterive contended plaintiff then had one year – or until February 25, 2009 – to file her lawsuit against Dauterive.  Because plaintiff did not file her state law claims against Dauterive until March 26, 2009, Dauterive contended plaintiff's state law claims prescribed.

However, this Court noted Dauterive's argument presupposes the plaintiff is alleging no violations of law beyond the date she filed her EEOC charge, a fact apparently refuted by plaintiff's Amended Complaint, wherein plaintiff alleges violations of state law beyond that date – August 25, 2007 -- as follows:

14.

Plaintiff asserts that Candace Frioux, Antoinette Lassiegne (Caucasian), and Neal Manual (Caucasian), **provided a hostile work environment subsequent to plaintiff's filing the EEOC claim.** Plaintiff was demeaned and intimidated in conferences by Candace Frioux, Antoinette Lassiegne, and Neal Manual, and was

---

[8]  La. Rev. Stat. §23:303(D) states:

> D. Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months.

34

also subjected to unfair evaluations.

**15.**

The discrimination, harassment and retaliation that defendant subjected Ms. Johnson to cause her severe emotional distress, mental anguish, humiliation and embarrassment, along with physical pain and suffering.

**16.**

On August 17, 2007, plaintiff attended Dauterive Hospital Employee Assisted Program (EAP), seeking counseling in order to address issues related to stress caused by the harassment she experienced while working at the hospital.

**17.**

Plaintiff requested a transfer on September 17, 2007. Her transfer was never granted.

**18.**

Feeling coerced and compelled to do so, plaintiff resigned from her position at Dauterive Hospital on November 2, 2007.

Based on the foregoing, this Court concluded to the extent plaintiff alleges causes of action for discrimination, harassment, and retaliation that allegedly occurred on August 25, 2007 or prior thereto, plaintiff's claims may well have prescribed, but that to the extent plaintiff alleged acts of discrimination harassment, and retaliation that post-date August 25, 2007, such claims may not have prescribed. Because Dauterive had not specified which state law "claims" it sought to have dismissed on prescription grounds, this Court ruled Dauterive had not carried its burden to show it was entitled to the relief requested, and this portion of Dauterive's motion to dismiss was denied for failure of Dauterive to carry its burden.

In the instant motion, Dauterive argues plaintiff alleges race discrimination, harassment, and retaliation in the following manner: (1) she was demoted from charge nurse; (2) she was subjected

to an unfair written evaluation; and (3) she was subjected to unfair disciplinary actions and daily harassment and retaliation from April 9, 2007 through August 25, 2007. Dauterive argues the foregoing claims were tolled for six months commencing with plaintiff's first contact with the EEOC – August 25, 2007 – and ending six months later, on February 25, 2008. Dauterive argues plaintiff was required to file suit against Dauterive no later than February 25, 2009 for her claims that she was demoted to charge nurse, subjected to an unfair written evaluation, unfair disciplinary actions, daily harassment, and retaliation. Because plaintiff did not file suit against Dauterive until March 26, 2009, Dauterive argues any state law claims based on race discrimination, harassment, and retaliation from April 9, 2007 through August 25, 2007 are clearly prescribed.

Plaintiff appears to concede all of the foregoing claims that pre-date August 25, 2007 are prescribed, except for one: plaintiff's demotion claim. Plaintiff contends she was stripped of her charge nurse responsibilities -- and thereby demoted – either on April 27, 2007 at the earliest, or May 14, 2007 at the latest. Plaintiff argues because her demotion – a discrete employment action and alleged discriminatory act – affected her pay, each additional paycheck subsequent to the demotion operates to trigger a new prescriptive period. Therefore, plaintiff argues her demotion claim did not accrue until she received her last paycheck at the end of October 2007. Plaintiff further argues because she timely notified the EEOC of her demotion claim, she benefits from the six-month tolling provided by La. Rev. Stat. §23:303(D), thus giving her until the end of April 2009 in which to file this claim. Because plaintiff filed her cause of action for demotion on March 26, 2009, she argues her demotion claim has not prescribed.

In response, Dauterive filed a reply brief arguing the plaintiff was not, in fact, demoted . Rather, Dauterive argues around this time, the hospital implemented a policy in which the nurse with

the most years of experience and/or knowledge in the emergency department was to be considered the "charge nurse," who would make "charge nurse" wages. Thus, Dauterive argues the plaintiff was not singled out for "demotion," but rather, the plaintiff merely became subject to the hospital's new "charge nurse" policy, which was implemented across-the-board, and all of the nurses who potentially had "charge nurse" responsibilities were thus notified. Dauterive also argues plaintiff continued to have the "charge nurse" designation until she resigned, and was frequently identified, and compensated, as the "charge nurse" on certain shifts.

Setting aside the issue of whether the plaintiff was demoted – a merits analysis that would require this Court to examine the evidence presented by both parties to determine whether there are issues of fact concerning this substantive claim – this Court concludes plaintiff's demotion claim is prescribed. Plaintiff's state law discrimination, retaliation, and harassment claims – which would include her demotion claim – are alleged under "Louisiana's Employment Discrimination Law," La. Rev. Stat. §23:301, *et seq.*" Under that body of law, La. Rev. Stat. §23:303(D) imposes a one-year prescription period for filing an employment discrimination claim.[9] Dauterive contends this one-year period commences on the day the injury or damage is sustained pursuant to Article 3492 of the Louisiana Civil Code,[10] and that the discriminatory act and damages occur upon the employee's first

---

[9] La. Rev. Stat. §23:303(d) states:

> D. Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months.

La. Rev. Stat. §23:303 (West 2009).

[10] Article 3492 states:

> Delictual actions are subject to a liberative prescription of one year. This prescription commences

notice of an adverse employment action. *See Eastin v. Entregy*, 865 So. 2d 49, 54 (La. 2004). Under this scenario, Dauterive argues plaintiff's demotion claim is prescribed, because the alleged demotion occurred no later than August 23, 2007 and was tolled for six months, commencing with plaintiff's first contact with the EEOC, on August 25, 2007. Dauterive argues this tolling period ended on February 25, 2008, and therefore, plaintiff was required to file suit against Dauterive by February 25, 2009. Because plaintiff did not file her demotion claim until March 26, 2009, Dauterive argues plaintiff's demotion claim is prescribed.

In response, plaintiff argues she was stripped of her "charge nurse" responsibilities – and thereby demoted – either on April 27, 2007 at the earliest (the first day she noticed she was not paid "charge nurse" wages), or on May 14, 2007 at the latest (the date plaintiff received email notification that the hospital's "charge nurse" policy was changing). However, plaintiff argues her demotion claim is subject to the equitable doctrine of "continuing violation," and therefore, the demotion claim did not accrue on the date she actually was demoted, but instead accrued on the date plaintiff received her last paycheck at the end of October 2007. Plaintiff argues that, in effect, each time she was paid less than her normal wage due to her demotion, there was a new violation beginning a new prescriptive period. Plaintiff then argues she had the benefit of the six-month tolling period under La. Rev. Stat. §23:303(D), which did not end until the end of April 2008. Therefore, plaintiff argues she had one year from the end of April 2008 – or until the end of April 2009 – in which to file her demotion claim. Because plaintiff filed her demotion claim on March 26, 2009, she argues her

---

to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.

La. Civ. Code art. 3492 (West 2009).

demotion claim is not prescribed.

To determine whether plaintiff's demotion claim is prescribed, this Court will look to federal jurisprudence, interpreting Louisiana law, for guidance, as Louisiana courts have looked to federal jurisprudence to interpret Louisiana discrimination laws. *Bustamento v. Tucker,* 607 So.2d 532, 538 n. 6 (La.1992). Therefore, in determining whether the equitable principle of "continuing violation" applies in this matter, it is appropriate for this Court to consider the doctrine of "continuing violation" as it applies to Title VII claims.

The "continuing violation" doctrine is known as an equitable exception to the applicable prescriptive period and arises "[w]here the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Abrams v. Baylor College of Medicine,* 805 F.2d 528, 532 (5th Cir.1986). In *Berry v. Board of Supervisors of Louisiana State University,* 715 F.2d 971 (5th Cir.1983), *cert. denied* 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986), the Fifth Circuit discussed factors to consider in determining whether a plaintiff can support a claim for a continuing violation:

> This inquiry, of necessity, turns on the facts and context of each particular case. Relevant to the determination are the following three factors, which we discuss, but by no means consider to be exhaustive. The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Waltman v. International Paper Co.,* 875 F.2d 468, 474-75 (5th Cir. 1989)*, citing Berry v. Bd. of Supervisors of Louisiana State Univ.,* 715 F.2d 971, 981 (5th Cir. 1983), *cert denied,* 479 U.S. 868,

107 S.Ct. 232, 98 L.Ed.2d 158 (1986).

Neither party has pointed this Court to a Fifth Circuit case addressing whether decreased pay following an alleged demotion constitutes a continuing violation under Louisiana law, however, this Court's own research found a district court opinion, *Grant v. Winn Dixie Louisiana, Inc.*, 1989 WL 159363, 3 (E.D. La.1989), in which the United States District Court for the Eastern of District of Louisiana addressed this issue and found the doctrine of continuing violation does *not* apply in such a situation. In *Grant*, the district court held:

> The claim in this case is timely only if plaintiffs show that it fits within this continuing violation exception. The issue thus becomes whether decreased pay for more strenuous work constitutes a continuing violation of the ADEA, or whether decreased pay for more strenuous work is merely an effect of the demotion, and the demotion constitutes the violation. Applying the three factors discussed in *Waltman,* this case is time barred. Plaintiffs claim that Grant was demoted because of his age and health condition. The decrease in pay and the increase in required strenuous work both result from this demotion.
>
> Although continued receipt of less salary may, in some circumstances, constitute a continuing violation, such is not the case here. Grant's lower pay was not a discriminatory act in itself as plaintiffs have not claimed that defendants paid Grant less because of his age compared to other similarly situated, but younger, dairy clerks. The lower pay was merely an effect of the demotion. Further, the demotion was permanent enough so that Grant should have expected to receive less pay continually after defendants demoted him. Thus, this permanence triggered Grant's duty to exercise his rights under the ADEA.

*Grant v. Winn Dixie Louisiana, Inc.*, 1989 WL 159363, 3 (E.D. La.1989).[11]  *See also Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007) (holding discrete discriminatory acts triggering the time limit for filing EEOC charges can only be discriminatory pay decisions, rejecting plaintiff's argument that payment of each paycheck

---

[11] Although this Court is not bound by the decisions of federal district courts, this Court agrees with the reasoning and rationale of the court in *Grant*.

40

constitutes a separate violation of Title VII unless each paycheck is motivated by discriminatory intent).

In the instant case, the plaintiff, also, claims she was demoted as a result of retaliation, for having filed an "anonymous complaint" against the hospital – *which she contends she did not file* – and that on April 27, 2007, she saw, for the first time, a lower wage on her paychecks.  Plaintiff alleges the decrease in pay – to the extent such a decrease can be proved at trial – resulted from her demotion.  However, this Court notes plaintiff's lower pay was not a discriminatory act in itself, that is, the plaintiff does not allege that she was paid less than the other similarly situated nurses, who also had "charge nurse" responsibilities, and whose pay, also, was reduced.  Rather, the lower pay was merely an effect of the change in policy as to "charge nurses."  Further, this Court notes, while the plaintiff may have had doubts about why her pay was decreased when she received her April 27, 2007 paycheck, such doubts should not have persisted after May 14, 2007, when Dauterive disseminated its email notifying plaintiff and colleagues Sarah Jackson and Joan Duplantis – all nurses – that henceforth, all "charge nurse" responsibilities and corresponding pay would be based on years of experience and knowledge in the emergency department.  Therefore, this Court concludes as of May 14, 2007, to the extent she might not have had the most years of experience and/or knowledge in the emergency department and might not, therefore, have been entitled to "charge nurse" wages, plaintiff should have expected to receive less pay continually after the change in "charge nurse" policy.  As in *Grant*, this Court concludes this "permanence" – or knowledge of the change in policy – triggered plaintiff's duty to exercise her rights under Louisiana law.

Consequently, this Court concludes the doctrine of continuing violation does not apply to plaintiff's demotion claim in this matter.  This Court concludes the plaintiff's demotion claim

41

accrued – at the latest – as of May 14, 2007.  The one-year limitations period began running on that date, but was suspended on August 25, 2007 when the plaintiff filed her EEOC charge pursuant to La. Rev. Stat. §23:303(D)..  The six- month suspension period ended on February 25, 2008.  Thus.  While Dauterive argues the one-year period began to run from February 25, 2008 and therefore ended on February 25, 2009, this Court concludes the period actually began to run on May 14, 2007, ran for approximately three months before the period was suspended when the plaintiff filed her EEOC charge on August 25, 2007, was tolled for six months pursuant to La. Rev. Stat. §23:303(D), and began to run again on February 25, 2008.  Because three months had already accrued, the plaintiff then had another nine months, or until approximately November 25, 2008 to file her claim.  Because plaintiff did not file her claim until March 26, 2009, this Court concludes plaintiff's demotion claim is prescribed.[12]

Considering the foregoing, Dauterive's motion to dismiss plaintiff's demotion claim is GRANTED, and the foregoing claim is DENIED AND DISMISSED WITH PREJUDICE as time-barred.

### 3.   Dauterive's Motion to Dismiss Plaintiff's State Law Claims of Discrimination, Harassment, and Retaliation <u>After</u> August 25, 2007

In its ruling on Dauterive's prior motion to dismiss, the Court identified the following allegations in plaintiff's Amended Complaint as an example of the plaintiff's allegations of state law claims for discrimination, retaliation, and/or harassment/hostile work environment occurring after August 25, 2007, the date plaintiff filed her EEOC charge:

---

[12] For the first time, Dauterive argues plaintiff's first contact with the EEOC was earlier than August 25, 2007, and actually occurred on the date plaintiff's completed her EEOC Intake Questionnaire on July 16, 2007.  Under either scenario, the plaintiff's demotion claim is prescribed.

**14.**

Plaintiff asserts that Candace Frioux, Antoinette Lassiegne (Caucasian), and Neal Manual (Caucasian), **provided a hostile work environment <u>subsequent to plaintiff's filing the EEOC claim.</u>** Plaintiff was demeaned and intimidated in conferences by Candace Frioux, Antoinette Lassiegne, and Neal Manual, and was also subjected to unfair evaluations.

**15.**

The discrimination, harassment and retaliation that defendant subjected Ms. Johnson to cause her severe emotional distress, mental anguish, humiliation and embarrassment, along with physical pain and suffering.

**16.**

On August 17, 2007, plaintiff attended Dauterive Hospital Employee Assisted Program (EAP), seeking counseling in order to address issues related to stress caused by the harassment she experienced while working at the hospital.

**17.**

Plaintiff requested a transfer on September 17, 2007. Her transfer was never granted.

**18.**

Feeling coerced and compelled to do so, plaintiff resigned from her position at Dauterive Hospital on November 2, 2007.

Of the foregoing claims, this Court has already dismissed plaintiff's constructive discharge/forced resignation and denial of transfer claims. Therefore, of the foregoing allegations contained in plaintiff's Amended Complaint, the only claims that remain in the lawsuit that post-date August 25, 2007 are plaintiff's claims for race discrimination, hostile work environment, retaliation, and plaintiff's claim for "emotional distress damages." In its motion, Dauterive does not argue the foregoing claims are prescribed. Rather, Dauterive argues the foregoing claims should be dismissed because they are without merit. The Court will address each set of claims in turn.

43

### a.    Plaintiff's Race Discrimination Claims

In its motion for summary judgment, Dauterive argues plaintiff's own testimony makes clear the plaintiff has no race discrimination claim against Dauterive after August 25, 2007.  In response, the plaintiff does not challenge this assertion or present any evidence or argument that she does, indeed, have a discrimination claim arising from incidents that occurred after August 25, 2007. Indeed, the plaintiff testified many of the actions taken by Dautereive were not motivated by the plaintiff's race, but rather, were in retaliation because of the filing of plaintiff's EOC charge, including her alleged denial of transfer and being harassed by Candace Frioux with updating charts.[13] Because plaintiff does not present specific evidence or argument in response to Dauterive's well-supported motion on this point, this Court grants Dauterive's motion for summary judgment seeking dismissal of all claims of race discrimination asserted by plaintiff against Dauterive that occurred after August 25, 2007 and are based on plaintiff's race.  Consequently, the foregoing claims are DISMISSED WITH PREJUDICE.

### b.    Plaintiff's Hostile Work Environment/Harassment Claims

In its motion for summary judgment, Dauterive argues the plaintiff has conflated her racial harassment/hostile work environment claims and her retaliation claims, that is, Dautertive argues the same alleged actions on the part of Dauterive that the plaintiff has identified as being harassing and/or hostile are also retaliatory.  Dauterive further argues the plaintiff has admitted none of the alleged incidents of harassment/hostility were motivated by plaintiff's race.  Therefore, Dauterive contends  all of plaintiff's claims of harassment/hostile work environment are actually claims of retaliation.  Dauterive attempts to limit plaintiff's claims of harassment/hostile work environment

---

[13] *See* deposition of Nakenia Johnson, at pp. 318, 321.

to the following incidents, which were identified by the plaintiff at her deposition:

- Candace Frioux (supervisor) harassing plaintiff to update her charts

- plaintiff was placed on a PIP (performance improvement plan) and a 90-day probationary period which extended past August 25, 2007

- plaintiff got no response to her request for a transfer, which she requested in September 2007

- plaintiff got no response to her request for a meeting with Alan Fabian, Dautereive's CEO, to discuss a complaint she filed with the hospital

In response to Dauterive's argument, the plaintiff argues her claims of harassment/hostile work environment cannot be limited to the ones identified by Dauterive in its motion – which Dauterive argues were the only incidents of harassment/hostile work environment identified at plaintiff's deposition – as being, in fact, harassing.  Rather, plaintiff argues all of the following incidents that occurred after she filed her EEOC charge were harassing and/or created a hostile work environment:

- Being forced to apologize to a similarly situated Caucasian employee for having uttered the word "nigga" when quoting a patient in reporting the patient's threats to a supervising doctor. Deposition of Nakenia Johnson, pp. 77, 87,171-177, 183-185, Rec. Doc. 59-5; p. 281, Rec. Doc. 59-6;

- Accusing plaintiff of misplacing a patient chart despite the fact that plaintiff was not the last person handling the chart. Deposition of Nakenia Johnson, p. 251, Rec. Doc. 59-6;

- Reprimanded for allegedly not attending to a wrinkled sheet on one of the patient beds. Deposition of Nakenia Johnson, p. 78, 187, Rec. Doc. 59-5;

- Being stripped of supervisory responsibilities and the additional pay that came therewith. Deposition of Nakenia Johnson, pp. 80,193-194, 199, Rec. Doc. 59-5; pp. 201, Rec. Doc. 59-6;

- Being purposely understaffed by her supervisor, while a similarly situated Caucasian employee was routinely overstaffed.  Deposition of Nakenia Johnson, pp. 78, 170-171, Rec. Doc. Rec. Doc. 59-5; pp. 301-302, 311, Rec. Doc. 59-6;

- Candace Frioux routinely disregarded plaintiffs complaints of race discrimination and harassment, but immediately reprimanded plaintiff when a similarly situated Caucasian employee alleged that Ms. Johnson used a racially derogatory term. Deposition of Nakenia Johnson, pp. 77, Rec. Doc. 59-5;

- Being subjected to an unfavorable performance evaluation. Deposition of Nakenia Johnson, pp. 79, Rec. Doc. 59-5;

- Being placed on a 90-day probation. Deposition of Nakenia Johnson, pp. 144-145, 166-167;

- Not being re-evaluated at the end of the probationary period, thus making her probationary status indefinite. Deposition of Nakenia Johnson, pp. 235-236, 318-319, 338, Rec. Doc. 59-6;

- Not being presented, during her probationary period, with any of the factors that the performance improvement plan required of defendants. Deposition of Nakenia Johnson, pp. 235-236, Rec. Doc. 59-6;

- Allowing similarly situated Caucasian employees to instigate others against plaintiff and to circulate rumors that she was about to be terminated. Deposition of Nakenia Johnson, pp. 161-163, Rec. Doc. 59-5; pp. 212-213, 240-241, Rec. Doc. 59-6;

- Using several alleged employee complaints against plaintiff without ever mentioning to plaintiff that any such employee complaints existed, or give her any opportunity to defend against them. Deposition of Nakenia Johnson, pp. 161-168, Rec. Doc. 59-5; pp. 232, 238, 266-267, Rec. Doc. 59-6;

- Plaintiff's request for transfer to another department was ignored. Deposition of Nakenia Johnson, pp. 90-91;[14]

- Being denied the opportunity to present complaints of discrimination, wherein management did not schedule any meetings with plaintiff. Deposition of Nakenia Johnson, p. 92, Rec. Doc. 56-5; p. 268, Rec. Doc. 59-6.

Plaintiff's claim of harassment/hostile work environment against Dauterive is brought pursuant to Louisiana's employment discrimination laws, which are designed to embody the protections of federal anti-discrimination laws, and specifically to prohibit discriminatory conduct

---

[14] Plaintiff's denial of transfer claim has been dismissed for lack of timely notice.

46

in the workplace. It is well-settled that because of the substantial similarities between state and federal anti-discrimination laws, courts may appropriately consider interpretations of federal anti-discrimination statutes when construing Louisiana law. *See, e.g., Hicks v. Central Louisiana Elec. Co., Inc.*, 712 So.2d 656, 658-659 (La. App. 1st Cir. 1998). *See also Trahan v. Rally's Hamburgers*, 696 So.2d 637, 640 (La. App. 1st Cir. 1997); *Brown v. Vaughn*, 589 So.2d 63, 64 n.1 (La. App. 1st Cir. 1991); *Polk v. Pollard*, 539 So.2d 675, 676 (La. App. 3rd Cir. 1989).

Plaintiff alleges she was subjected to a hostile work environment. A hostile environment is one that does not affect an employee's economic benefits, but instead creates a hostile or offensive working environment. *Hicks*, 712 So.2d at 658, *citing Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1049, n. 9 (5th Cir.1996) ("Discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment that violates Title VII."); *see also E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399-400 (5th Cir. 2007) ("[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated.").

In the Fifth Circuit, a plaintiff may establish a Title VII violation based on race discrimination which creates a hostile work environment by proving the following: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment of which plaintiff complained was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002);*Hicks*, 712 So. 2d at 658-59, *citing Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199 (5th Cir. 1992). However, where

the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff need only satisfy the first four elements listed above. *Celestine v. Petroleos De Venezuellas SA*, 266 F.3d 343, 354 (5th Cir. 2001).

For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive. *WC&M Enterprises*, 496 F.3d at 399, *citing Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). As the Fifth Circuit stated in *WC&M Enterprises*, citing the Supreme Court in *Harris*:

> Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. *Id.* at 23. No single factor is determinative. *Id.* In short, a showing that the employee's job performance suffered is simply a factor to be considered, not a prerequisite. *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 524 n. 33 (5th Cir.2001). As the Supreme Court stated, "even without regard to ... tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality."

*WC&M Enterprises*, 496 F.3d at 399, *citing Harris*, 510 U.S. at 21-22.

With respect to Title VII – and with the same rules being applicable to plaintiff's state law claims of harassment/hostile work environment – under the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim as well as a continuous pattern of much less severe incidents of harassment. *WC&M Enterprises*, 496 F.3d at 400, *citing Harvill*, 433 F.3d at 435-36; *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1073 (9th Cir. 2005) ("The required level of severity or seriousness varies inversely with the pervasiveness or frequency

of the conduct."), *quoting Nichols v. Azteca Rest. Enters., Inc.,* 256 F.3d 864, 872 (9th Cir. 2001);

*Cerros v. Steel Techs., Inc.,* 288 F.3d 1040, 1047 (7th Cir. 2002) (stating severity and pervasiveness

are, "to a certain degree, inversely related; a sufficiently severe episode may occur as rarely as once,

while a relentless pattern of lesser harassment that extends over a long period of time also violates

the statute."). Indeed, the Fifth Circuit has found a regular pattern of frequent verbal ridicule or

insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title

VII. *See, e.g., Walker v. Thompson,* 214 F.3d 615, 626 (5th Cir. 2000) (holding African-American

employees who were subjected to a variety of racial slurs over three-year period raised fact issue as

to whether slurs were sufficiently severe or pervasive to violate Title VII); *Farpella-Crosby v.

Horizon Health Care,* 97 F.3d 803, 806 (5th Cir. 1996) (plaintiff presented sufficient evidence from

which a jury could find severe or pervasive harassment where plaintiff was subjected to offensive,

sex-based comments two to three times per week).

When, as in this case, the hostile work environment complained of was allegedly caused, in

part, by a supervisory employee, the employer is subject to vicarious liability. In *Wyatt v. Hunt

Plywood Co., Inc.,* 297 F.3d 405, 409 (5th Cir. 2002), the Fifth Circuit set forth its established

methodology for analyzing supervisor harassment claims under Title VII, as follows:

> First we determine whether the complaining employee suffered a "tangible
> employment action."[15] If he has, the claim is classified as a "quid pro quo" case; if
> he has not, the claim is classified as a "hostile environment" case. In a quid pro quo
> suit, proof that a tangible employment action resulted from a supervisor's sexual
> harassment renders the employer vicariously liable, and no affirmative defense can
> be asserted. In a hostile environment case, however, the next inquiry is whether the
> supervisor's actions constituted severe or pervasive sexual harassment: If the conduct
> was not severe or pervasive, the employer cannot be held liable vicariously for the

---

[15] A "tangible employment action" consists of a "significant change in employment status, such as hiring,
firing, failing to promote, reassignment with significant different responsibilities, or a decision causing significant
change in benefits." *Ellerth,* 524 U.S. at 761.

supervisor's actions; if the conduct was severe and pervasive, the employer is vicariously liable unless the employer can establish both prongs of the conjunctive *Ellerth/Faragher* affirmative defense-the only affirmative defense to vicarious liability now available in a supervisor sexual harassment hostile work environment case.  To establish this defense, the employer must show that (1) the employer exercised reasonable care to prevent and correct promptly any sexual harassment, *and* (2) the complaining employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer.

(internal footnotes omitted).

In the instant case, Dauterive argues the incidents of harassment and/or hostile work environment it has identified do not rise to the level of severe or pervasive harassment sufficient to prevail on the claim.  In response, plaintiff appears to concede no one instance of harassment and/or hostile work environment is sufficiently severe, on its own, in order for the plaintiff to prevail. However, plaintiff argues the totality of the harassing activity occurred over an eight-month period and was sufficiently pervasive to be actionable.  Indeed, plaintiff contends Dauterive subjected her to a hostile work environment during her employment, ***due to her race and prior complaints of discrimination***.

The first element of plaintiff's *prima facie* burden – whether the plaintiff belongs to a protected group – is undisputed.  With regard to the second element of plaintiff's *prima facie* burden – whether the plaintiff was subject to unwelcome harassment – this Court concludes plaintiff has easily carried her *prima facie* burden with regard to this element.  A brief review of plaintiff's allegations show a jury could easily find plaintiff endured unwelcome harassment while working for Dauterive.  If accepted by the trier of fact as true, plaintiff endured a work environment in which her complaints of harassment were ignored, she was reprimanded for minor violations such as wrinkled bed sheets, was subjected to unfavorable performance evaluations, was placed on probation, was treated differently than other, similarly-situated Caucasian nurses, and was ostracized by other

employees and management.

The third element of plaintiff's *prima facie* burden – that the alleged harassment was motivated by race – is disputed by the parties. Dauterive argues plaintiff admits the alleged acts of harassment/hostile work environment were retaliatory in nature and not motivated by race. However, in making that argument, Dauterive is referring only to the alleged incidents of harassment *it has identified* from plaintiff's deposition. Dauterive argues the plaintiff cannot put forth additional instances of harassment in support of her claim. However, Dauterive has provided this Court with no authority supporting its argument that the plaintiff is so limited to the incidents of harassment/hostile work environment she identified at her deposition, nor is this Court aware of any authority or previous ruling of the Court that would so limit the plaintiff in proving her hostile work environment claim. Indeed, Dauterive merely argues "[n]one of the events [plaintiff] now identified form [plaintiff's] hostile work environment claim and they should be disregarded."[16]

Were this Court to limit its review of the plaintiff's harassment allegations to those identified by Dauterive, this Court might well conclude the plaintiff has not sufficiently established the foregoing allegations of harassment were motivated by race. However, in the absence of authority to the contrary, this Court must consider all of the allegations made by the plaintiff. Because Dauterive refers only to the incidents of harassment it has identified, Dauterive fails to present sufficient evidence showing the incidents of harassment alleged by plaintiff were not motivated by race. A review of some of those allegations shows the plaintiff is, indeed, arguing she was harassed because of her race, including: (1) plaintiff alleges she was purposefully understaffed while a similarly situated Caucasian employee was routinely overstaffed; (2) Candace Frioux, plaintiff's

---

[16] *See* Dauteruive's reply brief, Doc. 73, p. 8, n.8.

supervisor, routinely disregarded plaintiff's complaints of race discrimination and harassment, but immediately reprimanded plaintiff when a similarly situated Caucasian employee alleged that plaintiff used a racially derogatory term; and (3) Dauterive allowed similarly situated Caucasian employees to instigate others against plaintiff and to circulate rumors that plaintiff was about to be terminated. Additionally, with respect to all of her allegations of harassment, plaintiff argues "Dauterive has not subjected any similarly situated Caucasian employees to similar acts of harassment," which clearly alleges the acts of harassment were motivated by plaintiff's race. Thus, taking plaintiff's allegations as true, this Court concludes plaintiff satisfies the third element of her *prima facie* burden of showing the alleged harassment was motivated by plaintiff's race.

With regard to the fourth element of plaintiff's *prima facie* burden – the harassment affected a term, condition, or privilege of employment – the Court finds plaintiff has carried her burden for summary judgment purposes. In support of this element, plaintiff alleges because of her race she was: (1) stripped of her supervisory responsibilities and the additional pay that came with the supervisory position; (2) purposefully understaffed; (3) subjected to unfavorable performance evaluations; (4) placed on 90-day probation; (5) not re-evaluated at the end of the probationary period, which made her probationary period indefinite; (6) subjected to employee complaints against which plaintiff was unable to defend herself; (7) ignored when she requested a transfer; and (8) was denied the opportunity to present complaints of discrimination when her requests for meetings with management were ignored. These actions, if true, grant a basis for the trier of fact to find Dauterive's working environment was permeated with discriminatory intimidation, ridicule, and insult which was of a sufficiently severe and pervasive nature such that the conditions of plaintiff's

52

employment were altered and caused her to endure an abusive working environment.[17]

The Fifth Circuit has held a regular pattern of frequent verbal ridicule or insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title VII. *See, e.g., Walker v. Thompson,* 214 F.3d 615, 626 (5th Cir.2000). Considering the evidence of harassment presented by the plaintiff, this Court concludes the plaintiff has presented an issue of fact regarding whether the alleged harassing actions of Dauterive were sufficiently pervasive as to be actionable.

    c.    ***Faragher/Ellerth* Affirmative Defense**

Dauterive argues that, should the Court conclude summary judgment is not appropriate with respect to plaintiff's hostile work environment claim, it is nevertheless entitled to the *Faragher/Ellerth* affirmative defense to avoid liability "*under Title VII.*"

First, this Court notes the plaintiff's claims under Title VII have been dismissed as prescribed. Therefore, plaintiff's claim for racial harassment/hostile work environment is before this Court under Louisiana law. Neither party has addressed the issue of whether the *Faragher/Ellerth* affirmative defense is available under Louisiana employment discrimination law. However, this Court has conducted its own research, and it is clear from an examination of Louisiana jurisprudence, both state and federal, that the *Faragher/Ellerth* defense has been routinely applied by district courts to claims arising under the Louisiana Employment Discrimination Law, and this Court agrees with that application. *Otwell v. Aaron Rents, Inc.,* 2007 WL 433078, 3 (W.D. La. 2007) (MJ Hayes), citing 2006 WL 2513918 at * 12 (granting summary judgment on plaintiff's

---

[17] The Fifth Circuit has held the fifth element – the employer knew or should have known of the harassment and failed to take remedial action – is not required when the alleged harasser is a supervisor. *LeMaire v. Louisiana Dept. of Transp. and Development,* 480 F.3d 383, 393 (5th Cir. 2007), *citing Watts v. Kroger Co.,* 170 F.3d 505, 509 (5th Cir.1999). Here, the plaintiff alleges some of the harassment she suffered was at the hands of Candace Frioux, her supervisor. Therefore, the plaintiff need not satisfy the fifth element.

hostile work environment claim due in part to the fact that the defendant established that it was entitled to the *Faragher/Ellerth* affirmative defense); *Mayo v. Research Analysis & Maintenance, Inc.,* 2006 WL 2113186, *4 (W.D.La. 2006) (J. Drell) (applying *Faragher/Ellerth* defense to sexual harassment claims made under La. R.S. 23:332); *Daniels v. Home Depot, Inc.,* 2002 WL 1398643, *6 (E.D.La. 2002) (MJ Wilkinson) (granting summary judgment on plaintiff's race discrimination claim under Title VII and La. R.S. 23:301 *et seq.* after finding that defendants had proven *Faragher/Ellerth* defense); *see also Sears v. Home Depot, USA, Inc.,* 943 So.2d 1219, 1233 (La. App. 4th Cir. 2006); *Chaney v. Home Depot, USA, Inc.,* 940 So.2d 18, 23 (La. App. 4th Cir. 2006). Considering the foregoing, this Court concludes the *Faragher/Ellerth* affirmative defense is potentially available to Dauterive in the instant case.        Under the *Faragher/Ellerth* affirmative defense, if the harassing conduct was severe and pervasive, the employer is vicariously liable unless the employer can establish both prongs of the conjunctive *Ellerth/Faragher* affirmative defense. To establish this defense, the employer must show: (1) the employer exercised reasonable care to prevent and correct promptly any harassment, *and* (2) the complaining employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer. *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998); *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742 (1998).

In general, the case law suggests that an employer may satisfy the first prong by demonstrating it had an anti-harassment policy which it promulgated to employees and properly implemented and that, if an employee makes a complaint under that policy, the employer conducts a prompt investigation. *See Williams v. Admin. Review Bd.,* 376 F.3d 471, 478-79 (5th Cir. 2004); *Wyatt v. Hunt Plywood Co., Inc.,* 297 F.3d 405, 410, 413 (5th Cir.2002). Any remedial steps taken

by the employer "must be 'reasonably calculated' to end the harassment." *Skidmore v. Precision Printing and Packaging, Inc.,* 188 F.3d 606, 615 (5th Cir.1999), *quoting Jones v. Flagship Int'l,* 793 F.2d 714, 719-20 (5th Cir.1986). "What constitutes prompt remedial action depends on the facts of the case, and 'not every response by an employer will be sufficient to discharge its legal duty.' " *Id.* at 615, *quoting Waltman v. Int'l Paper Co.,* 875 F.2d 468, 479 (5th Cir.1989).

As to the second prong, *Faragher* instructs "[i]f the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care, and if the damages could reasonably have been mitigated, no award against a liable employer should reward a plaintiff for what her own efforts could have avoided." 524 U.S. at 807.

In the instant case, plaintiff does not dispute Dauterive had a policy in place to prevent racial harassment which specifically contains reporting procedures, but argues the mere existence of a policy is not sufficient if the policy is not implemented. Plaintiff argues she reported complaints of racial harassment to Candace Frioux, who ignored them. In one instance, sometime after August 25, 2007 (the date plaintiff filed her EEOC charge), the plaintiff alleges she requested a meeting with Alan Fabian, Dauterive's CEO, to discuss the harassment against her. Plaintiff alleges Ms. Broussard told her to provide three dates and times on which she could discuss her complaints with Mr. Fabian, but Ms. Broussard never followed up and never scheduled the meeting.[18] Additionally, the plaintiff testified Candace Frioux reported several people had complained about the plaintiff within the hospital. The plaintiff testified she asked Ms. Broussard whether those complaints had been investigated, and Ms. Broussard confirmed they had not been investigated. In this way,

---

[18] *See* deposition of Nakenia Johnson, p. 77, attached as exhibit to Dauterive's motion for summary judgment, Doc. 59.

plaintiff argues she was not able determine whether the "complaints" were real and legitimate or manufactured to harass the plaintiff.  In response, Dauterive argues even though the plaintiff might have complained about being "harassed," plaintiff testified she never complained such harassment was based on her *race*.

Dauterive does not address all of the allegations of harassment identified by the plaintiff in her briefing.  Again, Dauterive has not provided this Court with any authority suggesting this Court should ignore the plaintiff's allegations, simply because she did not testify about those allegations at her deposition.  Because Dauterive ignores the majority of plaintiff's allegations of harassment in its motion and reply brief, this Court concludes Dauterive has not sustained its burden of showing it is entitled to summary judgment on the *Faragher/Ellerth* affirmative defense at this summary stage of the litigation.

Consequently, Dauterive's motion for summary judgment seeking dismissal of plaintiff's state law harassment/hostile work environment claims that post-date August 27, 2007 is DENIED.

### d.    Plaintiff's Retaliation Claims

In its motion for summary judgment, Dauterive argues the plaintiff alleged she was retaliated against under Louisiana state law for filing an EEOC charge in light of the following alleged incidents that occurred after August 25, 2007:

1. Candace Frioux (plaintiff's supervisor) harassing plaintiff to update her charts

2. plaintiff was placed on a PIP (performance improvement plan) and a 90-day probationary period which extended past August 25, 2007

3. Candace Frioux did not correct the April 27, 2007 demotion from "charge nurse"

4. Plaintiff got no response regarding her transfer request

5. plaintiff got no response to her request for a meeting with Alana Fabian to discuss

a complaint she filed with the hospital

To establish a *prima face* case of retaliation under Title VII,[19] plaintiff has the initial burden of proving by a preponderance of the evidence a *prima facie* case of retaliation.  To establish a *prima facie* case of retaliation, plaintiff must show: (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action."  *Drake v. Nicholson,* 324 Fed.Appx. 328, 331 (5ᵗʰ Cir.2009); *Holloway v. Department of Veterans Affairs,* 309 Fed.Appx. 816, 817-18 (5ᵗʰ Cir.2009); *LeMaire v. Louisiana,* 480 F.3d 383, 388 (5ᵗʰ Cir.2007); *Banks v. E. Baton Rouge Parish School Bd.,* 320 F.3d 570, 575 (5ᵗʰ Cir. 2003).  "Protected activity" is defined as opposition to any practice made unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.  *Nigro v. St. Tammany Parish Hosp.,* 377 F.Supp.2d 595, 601 (E.D.La. 2005) (J. Lemmon), *citing Green v. Administrators of the Tulane Educational Fund,* 284 F.3d 642, 657 (5ᵗʰ Cir. 2002).  "Adverse employment actions" include only ultimate employment decisions such as hiring, granting, leave, discharging, promoting, or compensating.  *See, e.g., Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 708 (5ᵗʰ Cir.1997) (in anti-retaliation case, Fifth Circuit held neither a verbal threat of being fired, a reprimand for not being at an assigned work station, a missed pay increase, nor being placed on "final warning," constituted ultimate employment actions due to their lack of ultimate consequence); *Dollis v. Rubin,* 77 F.3d 777, at 779, 782 (in anti-retaliation case, Fifth Circuit held an employer's refusal to allow plaintiff employee to attend training sessions

---

[19] Again, it is well-settled that because of the substantial similarities between state and federal anti-discrimination laws, courts may appropriately consider interpretations of federal anti-discrimination statutes when construing Louisiana law.  *See, e.g., Hicks v. Central Louisiana Elec. Co., Inc.,* 712 So.2d 656, 658-659 (La. App. 1ˢᵗ Cir. 1998).  *See also Trahan v. Rally's Hamburgers,* 696 So.2d 637, 640 (La. App. 1ˢᵗ Cir. 1997); *Brown v. Vaughn,* 589 So.2d 63, 64 n.1 (La. App. 1ˢᵗ Cir. 1991); *Polk v. Pollard,* 539 So.2d 675, 676 (La. App. 3ʳᵈ Cir. 1989).

did not effect a material adverse change in terms or conditions of his employment, and thus did not

constitute an "ultimate employment decision").[20]  To determine causation, an employee must show

that "but for" the protected activity, the adverse employment action would not have taken place.  *Id.*

If the employee sets out a *prima facie* case, the burden shifts to the employer to "state a

legitimate non-retaliatory reason for its action." *Baker v. American Airlines, Inc.*, 430 F.3d 750, 755

(5th Cir. 2005), *citing Septimus v. Univ. of Houston*, 399 F.3d 601, 610 (5th Cir.2005).  After the

employer states the reason, "any presumption of retaliation drops from the case," and the burden

shifts back to the employee to show that the "stated reason is actually a pretext for retaliation."

*Baker*, 430 F.3d at 755, *citing Pineda v. United Parcel Service, Inc.*, 360 F.3d 483, 487 (5th Cir.

---

[20] As the court explained in *Peters v. Harrah's New Orleans*, 418 F.Supp.2d 843, 848 (E.D. La. 2006) (J. Africk):

> "[O]nly ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating satisfy the adverse employment action element of a prima facie case of retaliation." *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191 (5th Cir.2001) (quoting *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir.1995)) (internal quotations omitted). Title VII was not intended to "address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Dollis*, 77 F.3d at 781-82. "Interlocutory ... decisions which can lead to an ultimate decision are insufficient to support a prima facie case of retaliation." *Fierros*, 274 F.3d at 191 (quoting *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir.1997)) (internal quotations omitted). An adverse employment action must "have more than a tangential effect on a possible future ultimate employment decision." *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir.2001) (internal quotation and citation omitted). This restriction on the interpretation of adverse employment actions is necessary because, as the *Mattern* court explained, "[t]o hold otherwise would be to expand the definition of 'adverse employment action' to include events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee-anything which might jeopardize employment in the future. Such expansion is unwarranted." 104 F.3d at 708.

This Court notes the Fifth Circuit has implied the continuing vitality of the "ultimate employment decision" doctrine is questionable in the light of *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). *See Fierros v. Tex. Dept. of Health*, 274 F.3d 187, 192 n. 2 (5th Cir.2001) (" *Burlington Industries* and *Faragher* are noteworthy in the context of this court's 'ultimate employment decision' doctrine because the Supreme Court sets out a relatively broad definition of 'tangible employment action': 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits' "). *Felton v. Polles*, 315 F.3d 470, 486-87 (5th Cir. 2002). However, in *Felton*, the Fifth Circuit noted the *Dollis* case is the one "clear pronouncement" on the issue. This Court is bound to follow Fifth Circuit precedent, and, therefore, will apply the "ultimate employment decision" doctrine in this case.

2004).

In the instant case, for the purposes of this motion, Dauterive concedes the plaintiff was engaged in a protected activity by filing an EEOC charge. However, the parties dispute the second factor of a retaliation claim, *i.e.*, whether the plaintiff suffered an adverse employment action as a result of filing her charge. Dauterive argues the plaintiff did not suffer an adverse employment action. However, although Dauterive attempts to limit the instances of alleged retaliation to only the ones testified to by the plaintiff at her deposition – without providing any jurisprudential or statutory support for its argument that a plaintiff is so limited, beyond a possible attack on her credibility – the plaintiff has set forth additional alleged acts of retaliation, including a reprimand on September 10, 2007 for having deficient patient documentation, the first time plaintiff was ever so reprimanded; criticism on September 14, 2007 for skills plaintiff's supervisor had previously found to be plaintiff's strengths; assignment of burdensome work schedules; reprimands for using all caps in emails; payment for less "call" hours than a similarly situated colleague who had the same schedule, and when plaintiff requested that her pay be adjusted to mirror that of her colleague, plaintiff was accused by her supervisor and the head of HR of stealing; continued understaffing of plaintiff's shifts in October 2007; and the failure to lift plaintiff's 90-day probationary period, which was set to expire on September 25, 2007, thus depriving plaintiff of opportunities for promotion and transfer.[21]

In the instant case, this Court must consider not only the allegations of retaliation identified by Dauterive, but all allegations of retaliation alleged by the plaintiff. The majority of the foregoing allegations do not rise to the level of "ultimate employment decisions," including plaintiff's

---

[21] Although plaintiff also alleged she was denied a transfer in September 2007 and was forced to resign in November 2007, these claims have been dismissed for failure to provide sufficient notice to Dauterive of such claims.

allegation that she was reprimanded for having deficient patient documentation (admittedly the first time plaintiff was ever so reprimanded); criticized for skills plaintiff's supervisor had previously found to be plaintiff's strengths; assigned burdensome work schedules; reprimanded for using all caps in emails; and understaffed in her shifts. However, plaintiff also alleges she was placed on a PIP and a 90-day probationary period, which was set to expire on September 25, 2007 but was not, actually, expired, *thus depriving plaintiff of opportunities for promotion and transfer, and she* she further alleges she was *paid for less "call" hours than a similarly situated colleague who had the same schedule.*[22] Although this Court has dismissed plaintiff's denial of transfer claim as time-barred, the alleged failure to terminate plaintiff's probationary period could have resulted in a loss of opportunity for promotion. The Fifth Circuit has held retaliation that adversely affects an employee's promotion and compensation constitutes an adverse employment action. Therefore, this Court concludes the plaintiff has alleged, at least, two incidents that could, potentially, constitute an adverse employment action and, thus, has satisfied the second factor of the anti-retaliation analysis for purposes of summary judgment.

With respect to the third factor, a "causal link" is established when the evidence demonstrates "the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001), *citing Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). The Eleventh Circuit has held the "causal link" element is satisfied when the plaintiff shows the employment decision and her protected activity "were not wholly unrelated." *Medina*, 238 F.3d at 684, *citing Simmons v. Camden*

---

[22] Although plaintiff also alleged she was denied a transfer in September 2007 and was forced to resign in November 2007, these claims have been dismissed for failure to provide sufficient notice to Dauterive of such claims.

*County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.1985). It is well-settled that close timing between an employee's protected activity and an adverse action against her may provide the "causal connection" required to make out a *prima facie* case of retaliation. *Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997), *citing Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir.1993). However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive. The Fifth Circuit has noted, however, the mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a *prima facie* case. *See Swanson*, 110 F.3d at 1188 n.3.

In the instant case, the plaintiff has come forward with specific evidence that Dauterive was notified of plaintiff's EEOC charge on or around September 4, 2007;[23] and the majority of alleged retaliatory activity began the first week of September, 2007. Plaintiff argues the foregoing suggests a causal connection between the filing of the EEOC charge and the alleged retaliation. In response, Dauterive argues the plaintiff cannot show a causal connection because she has no evidence to show the plaintiff's *supervisor*, Candace Frioux, knew the plaintiff filed her charge during her employment; she has no evidence to show she was dissuaded from filing the EEOC charge, as she filed the charge during her employment; and she has no evidence to show any of the alleged incidents of alleged retaliation affected her job title, duties, hours, salary, or benefits, or that it caused any diminution in prestige among her co-workers.

First, this Court notes at least one of the plaintiff's allegations of retaliation concerns action

---

[23] Plaintiff has attached to her brief a copy of the EEOC charge that was mailed to Michelle Broussard, Dauterive's Human Resoirces Manager, indicating plaintiff's race discrimination and retaliation claims. See plaintiff's Exhibit 1.

taken by Ms. Broussard, Dauterive's HR Manager, who allegedly accused plaintiff of stealing when plaintiff requested that her payment for "call" hours be adjusted to reflect the "call" hours of a similarly situated colleague. It is undisputed Ms. Broussard knew about plaintiff's EEOC charge on or around September 4, 2007, which was shortly before the alleged retaliation began. Additionally, there is a question of fact regarding whether Ms. Frioux, plaintiff's supervisor, knew about the EEOC charge. Although Dauterive argues there is no "evidence" Ms. Frioux knew of the charge, the hospital clearly knew about the charge, and there is evidence Ms. Broussard and Ms. Frioux communicated about the plaintiff and the difficulty she was having at work by email on previous occasions.[24] It is reasonable to conclude Ms. Broussard might have notified Ms. Frioux – plaintiff's supervisor – that plaintiff had filed an EEOC charge detailing charges of race discrimination and retaliation, particularly since the EEOC charge requested a response from the hospital by October 4, 2007. Presumably, the input of Ms. Frioux would have been necessary for the hospital to respond to the charge, particularly as most of the plaintiff's allegations of retaliation are directed at Ms. Frioux. This Court concludes, the foregoing, when combined with the fact that the majority of the alleged retaliatory acts began the week the hospital was notified of the plaintiff's EEOC charge, satisfies the "causal connection" element of plaintiff's *prima facie* case of retaliation.

Having concluded the plaintiff sets forth a *prima facie* claim of retaliation, the burden then shifts to Dauterive to "state a legitimate non-retaliatory reason for its action." *Baker v. American Airlines, Inc.*, 430 F.3d 750, 755 (5th Cir. 2005), *citing Septimus v. Univ. of Houston*, 399 F.3d 601, 610 (5th Cir.2005). After the employer states the reason, "any presumption of retaliation drops from

---

[24] Plaintiff has attached several email communications between Ms. Frioux and Ms. Broussard on July 31, 2007, approximately two months before plaintiff filed her EEOC charge.

the case," and the burden shifts back to the employee to show that the "stated reason is actually a pretext for retaliation." *Baker*, 430 F.3d at 755, *citing Pineda v. United Parcel Service, Inc.*, 360 F.3d 483, 487 (5th Cir. 2004).

Review of Dauterive's briefing shows that, rather than offering a "legitimate non-retaliatory reason for its action," Dauterive merely argues the plaintiff's evidence does not constitute evidence of retaliation. What complicates matters is that the parties are addressing different allegations of retaliation; as explained previously, Dauterive attempts to limit or narrow the possible allegations of retaliation to four or five incidents the plaintiff specifically testified about at her deposition, while the plaintiff alleges and addresses numerous allegations of alleged retaliation in her brief. Dauterive only addresses the specific incidents it has chosen to focus on and ignores the additional incidents of alleged retaliation set forth in plaintiff's brief. As Dauterive has not provided this Court with any authority for its position that this Court cannot consider all of the plaintiff's allegations of retaliation, and as Dauterive does not address these additional allegations or provide a legitimate, non-discriminatory reason for these actions, this Court concludes there are genuine issues of material fact regarding whether Dauterive or its employees retaliated against the plaintiff, and summary judgment on this claim is not appropriate at this time.

### 4.    The After-Acquired Evidence Doctrine

In its motion, Dauterive argues – somewhat vaguely – that the after-acquired evidence doctrine "bars plaintiff's recovery," without specifying whether the doctrine applies to one of plaintiff's claims (and if so, which one), or all of them. Specifically, Dauterive argues the plaintiff would have been terminated from the hospital well in advance of the day she resigned, November 2, 2007, because plaintiff surreptitiously tape-recorded Dauterive administration personnel and other

employees during work hours without their consent, in clear violation of Dauterive policy. Dauterive argues many of the recorded conversations took place in the emergency room where patients were present and while patient information was being discussed. Dauterive argues plaintiff concealed a tape-recording device and did not obtain the consent of either hospital employees or patients to the recordings. Additionally, Dauterive argues plaintiff removed from the hospital several patient records containing confidential patient information, in violation of both Dauterive policy and HIPPA, and then disseminated the foregoing records in an unredacted form to the EEOC in connection with plaintiff's EEOC charge. The plaintiff does not deny that she made the recordings, but rather, focuses on her argument that the recordings do not violate Louisiana law or HIPPA.

It is unclear to this Court when the recordings in question were made, neither party having provided that information to the Court. If the evidence for Dauterive's argument was discovered after the alleged discriminatory/retaliatory actions took place, for Dauterive to win on this argument, Dauterive must satisfy the requirements set forth in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). In *McKennon*, the Supreme Court held that, "[w]here an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *See Smith v. Berry Co.*, 165 F.3d 390, 395 (5th Cir. 1999), *citing McKennon*, 513 U.S. at 362-63, 115 S.Ct. at 886-87.

Dauterive's argument is lacking in several respects. First, although Dauterive argues the plaintiff violated Dauterive policy by recording the conversations without the consent of other employees or patients, Dauterive has cited to the entire Dauterive Employee Handbook, without

64

specifying which portion(s) of the handbook was violated.  In this manner, Dauterive fails to meet its burden of establishing that the wrongdoing in question was of such severity that plaintiff in fact would have been terminated on those grounds alone if Dauterive had known of it at the time plaintiff resigned.

Furthermore, this Court has question as to whether the after-acquired evidence doctrine would wholly bar the plaintiff's recovery or would merely impact the assessment of damages.  In *McKennon*, the court considered "how the after-acquired evidence of the employee's wrongdoing bears on the specific remedy to be ordered," 115 S.Ct. at 885, concluding the problem is one to be addressed by the judicial system in the ordinary course of further decisions, to wit:

> We do conclude that here, and as a general rule in cases of this type, neither reinstatement nor front pay is an appropriate remedy. It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds.

*Id.* at 886.

In the instant case, if the plaintiff began recording Dauterive employees to "prove her case," as she testified at her deposition, it appears likely the recordings began after the alleged discriminatory/retaliatory action by Dauterive, which would, this Court presumes, not completely bar the plaintiff's recovery against Dauterive.  However, if Dauterive is successful in proving the recordings at trial, the foregoing could, potentially, impact the amount of damages recovered by the plaintiff if Dauterive can prove it would have terminated the plaintiff for the recordings before the date she ultimately resigned.

Considering the foregoing, this Court concludes Dauterive has failed to carry its burden with respect to this argument and summary judgment on this issue is, therefore, DENIED.

65

## IV.     Conclusion

Considering the foregoing,

IT IS ORDERED that plaintiff's claims against HCA under Title VII, Louisiana's Employment Discrimination Law, and Louisiana's Whistleblower Statute are DISMISSED WITH PREJUDICE, this Court having concluded HCA is not the plaintiff's "employer" for purposes of these statutes. HCA's motion for attorneys's fees, costs, and expenses "in bringing this motion" is DENIED for failure of HCA to cite this Court to any authority supporting its argument that it is entitled to same.

IT IS FURTHER ORDERED that plaintiff's denial of transfer claim is DISMISSED WITHOUT PREJUDICE for failure of the plaintiff to provide notice of such claim to Dauterive and for failure to exhaust her administrative remedies with respect to that claim.

IT IS FURTHER ORDERED that this Court's November 3, 2009 ruling is AMENDED to provide that plaintiff's state law claims for constructive discharge/forced resignation are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that plaintiff's motion to revive all of her previously dismissed claims is DENIED.

IT IS FURTHER ORDERED that Dauterive's motion to dismiss plaintiff's state law claims of discrimination, harassment, and retaliation that arose prior to August 25, 2007, including her demotion claim, is GRANTED, and the foregoing claims are DISMISSED WITH PREJUDICE as prescribed.

IT IS FURTHER ORDERED that Dauterive's motion to dismiss plaintiff's state law claims of race discrimination that occurred after August 25, 2007 is GRANTED, and the foregoing claims

are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Dauterive's motion to dismiss plaintiff's state law claims of racial harassment/hostile work environment that occurred after August 25, 2007 is DENIED.

IT IS FURTHER ORDERED that Dauterive's motion to dismiss plaintiff's state law claims of retaliation that occurred after August 25, 2007 is DENIED.

IT IS FURTHER ORDERED that the parties shall file an outline of claims pursuant to the sample outline form attached hereto. Each party asserting a claim shall file an outline, and the responding party shall file a responsive outline within seven days thereafter. The parties shall pay specific attention to the dates of all alleged claims in their outlines. Plaintiff shall file the first outline on or before February 25, 2011.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 11th day of February 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE